**In re BROOKTREE SECURITIES LITIGATION.**

**Civil No. 94–0868–K (AJB).**

United States District Court,
S.D. California.

Feb. 6, 1996.

William S. Verach, Keith F. Park, Milberg Weiss Bershad Hynes & Lerach, San Diego, CA, for plaintiff.

Tower C. Snow, Brobeck, Phleger & Harrison, San Francisco, CA, for defendant.

## ORDER

KEEP, Chief Judge.

Plaintiffs' class counsel ("class counsel") brings this motion for award of attorneys' fees and costs. On October 10, 1995, class counsel appeared before this court on this motion. At that hearing, the court requested additional briefing. Class counsel submitted its supplemental briefs on November 30, 1995.

### I. *Factual Background*

This case was a securities class action lawsuit. In their complaint, Plaintiffs alleged that Brooktree stock traded at artificially inflated prices between October 20, 1992, and March 9, 1994. Plaintiffs claimed Defendants manipulated the stock price to these artificially high levels in an attempt to stem

their declining value. Defendants allegedly issued a series of false and misleading positive statements which increased the stock value. Plaintiffs contended that Defendants represented that they were successfully diversifying into new markets, and that the predicted decline in earnings, disclosed on December 1, 1993, was due to deferred orders. On March 9, 1994, Defendants allegedly revealed that their diversification effort had failed, that revenues would decline further, that Brooktree had discontinued certain products, and that Brooktree would suffer a loss. At that time, the stock price declined sharply.

On June 2 and 3, 1994, two class action lawsuits, later consolidated, were filed in this court on behalf of persons who purchased Brooktree common stock between October 20, 1992, and March 9, 1994. The complaints alleged violations of sections 10(b) and 20(a) of the Securities Exchange Act of 1934.

On March 15, 1995, the parties entered into a definitive settlement whereby Defendants agreed to pay $5,500,000 in exchange for dismissal of all claims with prejudice. At a hearing August 14, 1995, this court granted preliminary approval of this settlement. At a hearing October 10, 1995, this court granted final approval of the settlement agreement, and approval of the plan of allocation.

At that hearing, the court also considered class counsel's motion for award of attorneys' fees and costs. Class counsel sought $1,650,000 in attorneys' fees, an amount equal to 30% of the settlement fund. Class counsel's brief and declarations provided a superficial overview of the work done in this case, but did not provide a detailed description of the actual amount of time and effort expended in resolving the litigation, nor an analysis of the complexity of the case and the challenges counsel faced in resolving it. For example, there was no indication of the number of attorneys who worked on this matter, for approximately how many hours they worked, or the nature of their efforts.

Instead, class counsel's brief focussed primarily on the broad policy considerations in favor of percentage-of-the-fund fee awards, and included exhibits from other cases in which percentage-of-the-fund fee awards have been approved. While many of these arguments may be compelling in general, class counsel offered no facts to justify its requested fee award in *this* case. Class counsel did not provide a sufficient factual record demonstrating that it was entitled to the Ninth Circuit "bench mark" percentage fee award of 25%, much less a 5% upward departure from the Ninth Circuit "bench mark." The court was unable to make a proper "reasonableness" determination on that record.

For these reasons, the court denied without prejudice the initial request for attorneys' fees, and granted class counsel leave to submit supplemental materials to justify the fee amount in accordance with the court's October 10 ruling. In its ruling, the court emphasized that justification as to the reasonableness of class counsel's desired fee was required. *See* Tr. (10/10/95) at 4–6, 17–18, 20.

The court also requested supplemental briefing regarding class counsel's request for costs. At the October 10 hearing, class counsel sought reimbursement for expenses and costs in the amount of $150,678.99. Of that amount, lead counsel Milberg Weiss Bershad Hynes & Lerach submitted an expense request of $147,083.46. The expense breakdown submitted for the hearing included non-itemized sub-totals, apparently accumulated over a one year period, of $117,430.99 for "experts/consultants/investigators," $7,389.77 for "photocopying," and $3,320.24 for "meals, hotel and transportation." [1]

These sub-totals failed to indicate, *inter alia*, the identities of the experts and consultants and their time expenditures and hourly rates, how many pages were photocopied and

---

1. For the October 10 hearing, associated counsel Schiffrin & Craig submitted a cost request of $3,078.53. Though the court found that most of the Schiffrin expenses were minimal and reasonable, the court expressed concern over the request for reimbursement of $1,892,57 in non-

itemized expenses and costs for meals, hotels, and transportation. Tr. (10/10/95) at 22. Therefore, the court granted Schiffrin & Craig leave to submit additional information regarding this expense request.

at what cost per page, and how many meals and hotel rooms were charged. Class counsel also failed to explain the necessity for these expenditures, particularly in light of the relative brevity of the case, the fact that only two uncontested motions were brought in this case,[2] and the fact that Brooktree, lead counsel Milberg Weiss, associated counsel Finkelstein & Associates, and class counsel's primary expert, Princeton Venture Research, Inc., are all located in San Diego, California. Thus, the court had no meaningful way to assess the reasonableness of the claimed expenses and fees, and granted class counsel leave to submit further breakdowns of, and explanations for, their expenses. After reviewing associated counsel Finkelstein & Associates' cost breakdowns, the court granted Finkelstein & Associates' request for reimbursement of expenses.

## II. *Discussion*

### A. *Legal Standard*

■ The district court has discretion to use either the percentage-of-the-fund method or the lodestar/multiplier method in calculating fee awards in common fund cases. *In re Washington Pub. Power Supply Sys. Litig.*, 19 F.3d 1291, 1295 (9th Cir.1994). In common fund cases in the Ninth Circuit, "[n]o presumption in favor of either the percentage or the lodestar method encumbers the district court's discretion to choose one or the other." *Id.*

■ The choice between lodestar and percentage calculation depends upon the circumstances of the case. *Id.* at 1296 (citing *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir.1990)). "As always, when determining attorneys' fees, the district court should be guided by the fundamental principle that fee awards out of common funds be *'reasonable under the circumstances.'*" *Id.* (quoting *Florida v. Dunne*, 915 F.2d 542, 545 (9th Cir.1990)).

■ In cases where the district court elects the percentage-of-the-fund method, the Ninth Circuit has set 25% as the "bench

mark" for common fund fee awards. *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir.1989). The "bench mark" amount "can then be adjusted upward or downward to account for any unusual circumstances involved," although the district court must make a clear record justifying any upward or downward departures. *Id.* Courts cannot rationally apply any percentage in the abstract, without reference to all the circumstances of the case before it. *Washington Pub. Power*, 19 F.3d at 1298.

■ Finally, "[b]ecause in common fund cases the relationship between plaintiffs and their attorneys turns adversarial at the fee-setting stage, courts have stressed that when awarding attorneys' fees from a common fund, the district court must assume the role of fiduciary for the class plaintiffs." *Id.* at 1302.

### B. *Method of Fee Calculation*

■ Class counsel argues that the court should elect to apply the percentage-of-the-fund method of fee calculation rather than the lodestar/multiplier method in this case because of the "efficiency and rapidity with which the litigation was resolved." Supp. Mem. at 4. Class counsel asserts that the lodestar/multiplier method emphasizes the accumulation of hours, promotes inefficiency and delay in the resolution of cases, and rewards attorneys for protracted motion practice. In sum, class counsel contends that the percentage-of-the-fund method aligns the interests of class counsel and the class, rather than rewarding attorneys for hours spent on cases, as the lodestar method does.

The court agrees with class counsel. The percentage-of-the-fund method avoids many of the conflicts of interest the lodestar method can generate. Thus, the court elects to apply the percentage-of-the-fund method of fee calculation in this case. The court turns now to an analysis of the reasonableness of the fee requested by class counsel in this case.

---

**2.** The court heard a motion for preliminary approval of the settlement on August 14, 1995. The court heard a motion for final approval of the settlement, approval of the plan of allocation, and award of attorneys' fees and costs on October 10, 1995.

### C. Reasonableness of Class Counsel's Fee Request

In its Supplemental Memorandum, class counsel presents two arguments to support its contention that $1,650,000, 30% of the settlement fund, is reasonable under the circumstances of this case. First, class counsel argues that the requested fee in this case is reasonable because no class members objected to class counsel's notification to the class that class counsel would seek as fees up to 33⅓% of the common fund. Second, class counsel argues that the fee request in this case is reasonable because seventeen other courts have approved 30% fee awards to lead counsel Milberg Weiss in cases involving common funds of similar size.

### 1. Notification to the Class of the Proposed Fee Award

■ Class counsel contends that the court should approve its requested fee of 30% of the common fund because no class members objected to class counsel's notification to the class that it would seek as fees up to 33⅓% of the fund. Failure of class members to object to the proposed fee award, however, is not dispositive. Rather, in this type of case, the court must act as a fiduciary for the class plaintiffs, and "with 'a jealous regard to the rights of those who are interested in the fund.'". *Washington Pub. Power*, 19 F.3d at 1302 (quoting *In re Washington Pub. Power Supply Sys. Litig.*, 779 F.Supp. 1063, 1083 (D.Ariz.1990)). Thus, though no class members objected to class counsel's proposed fee award, the court's evaluation of the reasonableness of class counsel's fee request under the circumstances of this case does not turn on this factor—it is noted, but not given significant weight since the court has no information about the sophistication of the class nor its members' awareness of issues concerning attorneys' fees.

### 2. Other Courts' Fee Awards

■ Class counsel attempts to justify its request for a fee award greater than the "bench mark" of 25% by providing the court with seventeen cases where courts have awarded as fees 30% of a common fund in cases where the fund was of comparable size to the fund in the instant case.[3] The orders provided to the court from these seventeen cases are brief, bottom-line orders prepared by lead counsel for the court's signature. These orders do not reflect the factors influencing each court's upward deviation from the Ninth Circuit's "bench mark" percentage fee award of 25%. Therefore, this court cannot analyze whether similar factors are present in this case which might justify an upward departure from the "bench mark" percentage award. Fee awards in other cases, without justification by the court, do not explain how a 30% fee award is reasonable under the specific circumstances of *this* case.

■ Therefore, despite two opportunities to demonstrate to the court that a 30% fee award is reasonable under the circumstances of this case, class counsel has failed to explain why the circumstances of this case justify the fee award it seeks. In its initial moving papers and oral argument, class counsel sought attorneys' fees of 30% of the settlement fund, submitting orders from other cases in which courts approved 30% fee awards and emphasizing the lack of objections from class members to Class Counsel's notification of its intention to seek a 33⅓% fee award. After the court noted its concern about the paucity of information that would justify such a large fee award and such high

---

3. Three pages of class counsel's seventeen page Supplemental Memorandum are composed entirely of case citations to cases where other courts have allegedly awarded 30% fee awards in cases involving common funds of between three and twelve million dollars. *See* Supp.Mem. at 9–12. As none of these cases are published, class counsel apparently intended to supply the court with copies of the decisions in these cases as exhibits attached to the Declaration of Keith F. Park.

However, of the thirty cases cited in the three pages in class counsel's Supplemental Memorandum, only seventeen are actually attached to Mr. Park's declaration, even though exhibit numbers are assigned to all thirty cases in class counsel's brief. In addition, on more than one occasion, the same exhibit number is assigned to more than one citation in the three page list. Thus, as class counsel provided the court with only seventeen of the thirty cases cited in the Supplemental Memorandum, the court will consider only those seventeen cases.

costs, the court granted class counsel additional time in which to submit supplemental materials. Class counsel resubmitted the orders from other cases, reargued the probative value of the failure of class members to object to the intended fee, and submitted attorney and paralegal timesheets and declarations describing in a general manner various types of work performed and expenses incurred. However, class counsel offered no discussion regarding whether 30% of the fund is a reasonable percentage award for the work performed in this case. Thus, in the absence of any other analysis, and in an effort to determine the type of legal work performed in this case, the complexity of this case, and ultimately the reasonableness of the fee request, the court has examined the timesheets submitted by class counsel.

The timesheets do not support class counsel's argument that its requested fee award is reasonable. First, class counsel Mr. Lerach's timesheets reveal 110 hours of legal work on this case, at a rate of $475 per hour. Neither the original brief nor the Supplemental Memorandum includes any discussion of the reasonableness of an hourly rate of $475 per hour under the circumstances of this case, and the court knows that this is an extremely high hourly rate in the local legal market.

Review of the timesheets also reveals 195.75 hours of work performed by paralegals at hourly rates ranging from $105 per hour to $135 per hour. Again, class counsel's Supplemental Memorandum addresses neither the reasonableness of the time expended for these charges nor the reasonableness of the hourly rates charged. The timesheets reveal paralegals performing "filing" at a rate of $105 per hour, more than twenty-six hours of "document organization" at a rate of $105 to $110 per hour, and "misc. projects" at a rate of $105 per hour. Park Decl., Exh. 1, pp. 18, 20–22.[4] In addition, the timesheets note two hours spent on "delivery" at a rate

of $115 per hour. *Id.* at p. 22. In the absence of evidence, or even argument, demonstrating that under the circumstances of this case $475 per hour is a reasonable rate for 110 hours of legal work, that $105 per hour is a reasonable rate for filing and "misc. projects," that $110 per hour is a reasonable rate for "document organization," and that $115 per hour is a reasonable rate for "delivery," the court cannot find that the requested fee award is reasonable based upon an analysis of the timesheets.

To the contrary, the circumstances of this case demonstrate that a smaller fee award is reasonable. First, a relatively short time period of ten months elapsed from the time of filing of the complaints in this case to its settlement. Second, though this case had been pending since June 1994, only two uncontested motions were brought—for preliminary approval of the settlement and for final approval of it. Thus, this case required class counsel neither to engage in numerous motions nor to commit an extensive staff to the case for a period of many years.[5] Indeed, with no analysis of the complexity of this case, and based upon the quick and apparent ease of settlement, this case does not appear to have been of even "standard" difficulty. It may have been that due to the outstanding research before filing the complaint, the sophistication of the complaint, and the nature of the evidence Plaintiffs gathered before filing, Defendants were forced to capitulate early in the litigation. It is equally plausible that Defendants were sued with a form complaint, did a rapid financial analysis, and decided that $5.5 million was less expensive in the long run than fighting a frivolous lawsuit. Based upon class counsel's submissions, the court cannot determine which of these two analyses, or combination thereof, is accurate.

When a court approves counsel for a class action, the court finds that that counsel is

---

4. The court notes here that associated counsel Finkelstein & Associates, also a San Diego law firm, bills $75 per hour for its paralegal services. *See* Finkelstein Decl. ¶ 2.

5. The court notes that were class counsel to be compensated on an hourly basis for its work in this case, it would have had to have had attorneys and paralegals work 5,500 hours at an average rate of $300 per hour to arrive at a $1,650,000 fee award. Class counsel's submissions, however, reveal that it spent 1,254.85 hours in attorney and paralegal time on this case, or $1,314.90 per hour combined.

competent to perform the task at hand. However, unlike a client, the court does not negotiate the "terms," i.e., the charges, hours, and services, of the representation. Here, the court has no doubt that class counsel was competent to represent the class in this action; but, without some justification from class counsel as to why the "terms" of its representation are reasonable in the context of this case, the court cannot approve the fee class counsel seeks. To take money from the class and deliver it to the class's attorneys, the court must verify that the facts and complexity of the case justify the amount awarded and that the case warrants the actions taken by counsel in prosecuting it. Class counsel has not provided the court with this justification. Therefore, under the circumstances of this case, the court finds that a fee award of 30% of the fund is unreasonable, and turns to the issue of whether an award equal to 25%, the "bench mark," is appropriate.

█ The court finds that the "bench mark" award is not appropriate in this case. Rather, based upon the materials submitted by class counsel, the court concludes that this case was not a standard class action lawsuit, but instead an unusually simple one. The court has tried to balance class counsel's reputation as a vigorous advocate in this type of case, and its obvious skill in handling them, against the absence of any evidence of or discussion of the challenges, complexity, novelty, and difficulty of prosecuting the claims herein. In so doing, the court has departed downward from the 25% bench mark to 15% of the common fund, or $825,-000. It has arrived at this figure by weighing the hours expended by class counsel, evaluating the lodestar, and looking at the relative ease with which settlement was reached. Regretfully, no further guidance was provided by class counsel.

The court notes that associated counsel Schiffrin & Craig requests fees in the amount of $93,187.50, as compensation for 289.5 hours of work on this case. *See* Schiffrin Decl. ¶ 5 and Exh. A. Associated counsel Finkelstein & Associates requests fees in the amount of $36,912.50, as compensation for 138.6 hours of work on this case. *See* Finkelstein Decl. ¶ 10. Thus, associated counsel asserts that its share of the total fee award is $129,100, as compensation for a combined total of 428.1 hours. Because the court's analysis is of the total fee award class counsel requests, the court has not done an intensive analysis of associated counsel's asserted fees. However, the court notes that associated counsel's fees do not appear unreasonable, though associated counsel's rates are at the high end of the local legal market.

After deducting the $129,100 fee award for associated counsel from the full fee award of $825,000, lead counsel Milberg Weiss will receive a fee award of $695,900 as compensation for 826.75 hours of work on this case.[6] The number of hours of work performed by lead counsel on this case is not quite twice the time expended by associated counsel. Yet assuming a net fee award of $695,000, lead counsel will receive fees of more than five times that of associated counsel. Hence, comparatively, a 15% fee award generously compensates class counsel for its work.

Although the court has elected to apply the percentage-of-the-fund method of fee calculation in this case, it is instructive to analyze the percentage fee request and the fee award in the context of the lodestar/multiplier method. Class counsel asserts that the legal work performed in this case results in a lodestar of $323,626.25. Supp.Mem. at 7. Thus, as class counsel discusses in its Supplemental Memorandum, were the court to use the lodestar/multiplier method, the requested fee of $1,650,000 would equate to a 5.10 multiplier, which, as class counsel acknowledges, is "[a]t the high end of the range of multipliers awarded in common fund cases and one that the Court might not readily use." *Id.* By comparison, a fee award of $825,000, an amount equal to 15% of the common fund, results in a multiplier of 2.55, or 2.55 times the lodestar of $323,626.25. This is a reasonably high lodestar. *See Rawlings v. Prudential–Bache Properties,*

---

6. This total is comprised of 631 hours of work performed by attorneys and 195.75 hours of work performed by paralegals.

*Inc.*, 9 F.3d 513, 517 (6th Cir.1993) (affirming district court's rejection of requested multiplier of 3.3 and use of multiplier of 2). Thus, had the court applied the lodestar/multiplier method to this case, class counsel's fee award quite possibly could have been less than $825,000, particularly since the court has no discussion of complexity and no basis by which to conclude that this was anything other than a simple case.

### D. *Expenses and Costs*

Class counsel has modified its cost request to $146,172.79. Further, class counsel has submitted *additional information regarding* these reimbursement requests. Under the "common fund" doctrine, class counsel is entitled to reimbursement of reasonable out-of-pocket expenses and costs in obtaining a settlement.[7] *Vincent v. Hughes Air West*, 557 F.2d 759, 769 (9th Cir.1977).

■■■ Class counsel asserts that the bulk of its expenses are charges paid to its primary expert, John Torkelson of Princeton Venture Research, Inc. Mr. Torkelson's charges comprise $113,305.99. Class counsel submits the declaration of Mr. Torkelson in support of its requested reimbursement. Mr. Torkelson is the president of Princeton Venture Research, Inc., a company comprised primarily of securities and financial analysts who provide analysis of individual stocks and selected industries to institutional investors and corporate clients. Torkelson Decl. ¶ 3. Mr. Torkelson states that his firm expended 662 hours of work on this case, pursuant to its non-contingent engagement by lead counsel, accumulating fees of $111,530 for work performed from January 1, 1994 through April 28, 1995. *Id.* at ¶ 27. He also claims $1,775.99 in other expenses.

Regarding his fees, neither Mr. Torkelson nor class counsel provides the court with a breakdown of the hours expended in work on this case, or with Mr. Torkelson's hourly rates and those of his colleagues. As a result, *the court cannot discern what services* Mr. Torkelson performed, for what cost, and for what time period, and what services were performed by word processors and support staff. Though the court will concede that experts can be invaluable in prosecuting lawsuits, class counsel here has failed to provide the court with anything indicating the reasonableness of Mr. Torkelson's services and charges under the circumstances of this case. Because the court cannot evaluate the reasonableness of those services in the context of this case, it cannot approve class counsel's requested reimbursement of $111,530 in expenses.

Mr. Torkelson also states in his declaration that his firm incurred expenses in the amount of $1,775.99 in duplication, computer information retrieval, telephone and telex, and postage and shipping expenses. *Id.* at ¶ 28. Though again class counsel has provided the court only with general totals, and no detailed information about these expenses, in light of the relatively small amount requested for what was apparently more than one year's work, the court approves this request. The court orders lead counsel reimbursed in the amount of $1,775.99 for expenses incurred by Mr. Torkelson and Princeton Venture Research, Inc.

■■■ Class counsel states that the remainder of the amount requested for reimbursement for expenses for experts, consultants, and investigators ($4,125.00) was for the "[c]onsulting services of an ex-employee of Brooktree who has requested anonymity." Supp.Mem. at 3, n. 1. Without further information, the opportunity to provide which has already once been granted, the court cannot evaluate the reasonableness of this expenditure, and thus cannot award this amount to

---

7. The court notes that the $146,172.79 in expenses and costs requested by class counsel at this time is $4,506.20 less than the $150,678.99 in expenses and costs requested by class counsel at the October 10 hearing. Review of class counsel's *supplemental submissions* reveals that the difference in amount requested is apparently comprised of $3,320,24 in expenses and costs for non-itemized meals, hotels, and transportation that lead counsel Milberg Weiss has "made the

decision to waive," and $1,185.96 in expenses and costs for non-itemized meals, hotels, and transportation that associated counsel Schiffrin & Craig has decided to waive. *See* Park Decl. at 1; Schiffrin Decl. at 2. Thus, for purposes of this analysis of class counsel's request for reimbursement of expenses and costs, the court acknowledges that these previously sought expenses for meals, hotels, and transportation have been waived.

class counsel. For example, class counsel fails to demonstrate to the court that the information for which this anonymous consultant was paid was not information that could have been obtained at no cost through the use of a subpoena. Nor does class counsel detail the effort and time the informant expended in accumulating this $4,125 fee. The court does not know whether this figure is a negotiated fee for one hour of minimal information, or if the figure comprises hourly work done at $50 per hour. Therefore, the total amount of expenses and costs awarded to class counsel for experts, consultants, and investigators is $1,775.99.

In addition to seeking reimbursement for expenses for experts, consultants, and investigators, class counsel seeks reimbursement for photocopying expenses in the amount of $7,389.77. In his declaration accompanying the Supplemental Memorandum, Mr. Park states that $3,954.37 is the amount lead counsel Milberg Weiss paid to outside vendors for the cost of copies of documents produced to lead counsel by Defendants and third parties, and the remaining sum is lead counsel's internal cost of photocopying over 17,000 pages of material at $0.20 per page. The court orders class counsel reimbursed in the amount of $7,389.77 for photocopying expenses.

Finally, class counsel apparently seeks reimbursement for an additional $20,166.07 in expenses and costs. In its initial moving papers, without discussion, class counsel sought $18,942.46 in expenses and costs for postage ($134.79), telephone, telex and facsimile ($430.69), messenger, courier and Federal Express ($2,431.00), special secretarial and word processing services ($2,081.03), filing and legal fees ($4,967.03), and on-line legal research services ($8,897.92). *See* Park Decl. (10/03/95) ¶ 4. However, in neither its initial moving papers nor its supplemental submissions has class counsel presented argument or evidence with respect to these expenses, and in its supplemental materials class counsel makes no reference to them at all. Therefore, the court cannot evaluate the reasonableness of these expenses under the circumstances of this case. As a result, and after already permitting class counsel to submit supplemental materials to explain its request for reimbursement of expenses, the court cannot award lead counsel reimbursement for these expenses.[8]

Based on the foregoing, IT IS HEREBY ORDERED:

1. Applying the percentage-of-the-fund method of fee calculation in common fund cases, class counsel is awarded $825,000 in attorneys' fees, an amount equal to 15% of the $5,500,000 settlement fund;

2. Lead counsel Milberg Weiss Bershad Hynes & Lerach is awarded $9,165.76 in expenses and costs, an amount comprised of $1,775.99 in expenses for experts, consultants, and investigators for Mr. John Torkelson and Princeton Venture Research, Inc., and $7,389.77 for photocopying expenses; and

3. In accordance with this court's finding at the October 10, 1995, hearing that associated counsel Schiffrin & Craig's requested reimbursement of $1,185.96 in expenses was minimal and reasonable, Schiffrin & Craig is awarded that amount.

IT IS SO ORDERED.

---

8. There is no indication in either class counsel's initial moving papers or in the supplemental materials of what services resulted in expenses of $1,223.61, the amount remaining unaccounted for in class counsel's request for reimbursement of expenses and costs.