**In re FLEET/NORSTAR SECURITIES LITIGATION.**

**Civil Action No. 90–0173B.**

United States District Court,
D. Rhode Island.

July 28, 1997.

Matthew Medeiros, Medeiros, Karmen & Sanford, Providence, RI, Michael D. Gottsch, Brenda M. Nelson, C. Oliver Burt III, Burt and Pucillo, Haverford, PA, Mark C. Gardy, Ralph L. Ellis, Andrew G. Weiss, Abbey & Ellis, New York City, Robert M. Kornreich, Wolf, Popper, Ross, Wolf & Jones, New York City, Rochelle Rottenstein, Stull, Stull & Brody, New York City, Daniel J. Schatz, RI Dept. of Business Regulation, Providence, RI, Richard Greenfield, Haverford, PA, for Plaintiff Wallerstein.

Patricia A. Sullivan, Edwards & Angell, Providence, RI, Roger P. Fendrich, Scott D. Schreiber, Patricia A. Dean, Arnold & Porter, Washington, DC, for Defendants.

### Supplemental Opinion

FRANCIS J. BOYLE, Senior District Judge.

This opinion supplements an award of attorneys' fees and certain expenses in this action. *In re Fleet/Norstar Securities Litigation,* 935 F.Supp. 99 (D.R.I.1996). That opinion did not deal with payment for or reimbursement to plaintiffs' counsel of expert witness fees and expenses because there was no support for such payment or reimbursement as part of the initial request for attorneys' fees and expenses. The parties subsequently requested an award of appropriate payment for or reimbursement of expert witness expenses to plaintiffs' counsel.

From the outset, it must be made crystal clear that this opinion, like the one before it regarding attorneys' fees, is an essential feature of the global settlement of this action. Should plaintiffs' counsel refuse to consent to the award of expenses ordered by this court, then the settlement will not be approved by this court.

For more explicit detail concerning the background of this litigation, reference may be had to *In re Fleet/Norstar Securities,* 935 F.Supp. at 102–04. The background provided in this opinion therefore will be condensed, in the interest of economy. In 1990, plaintiffs brought a securities fraud class action suit against defendant Fleet/Norstar Financial Group, Inc. and twenty-two individual defendants. The class plaintiffs were purchasers of Fleet common stock who allegedly suffered losses in 1990 after purchasing or reinvesting in Fleet stock, due to the defendants' alleged violations of securities laws and common law. In a separate but related action not at issue here, other named plaintiffs brought a shareholder derivative suit on behalf of Fleet/Norstar Financial Group, Inc. to recover losses the company allegedly suffered. The parties in both the class action and the derivative action reached settlement before any claims were tried. *In re Fleet/Norstar,* 935 F.Supp. at 104.

During the course of this action, and continuing until the time of settlement, plaintiffs' counsel retained and used the services of two firms of experts, Melvin E. Gavron, C.P.A., and Princeton Venture Research, Inc. There are no written agreements with these experts. The relationship between them and plaintiffs' counsel is based entirely on oral communications.

Gavron was retained to analyze and provide testimony relating to liability issues and

advise plaintiffs' counsel on accounting matters. His agreement with plaintiffs' counsel provided for a monthly retainer of $7500 and expenses, with the balance of his bill for services to be paid upon the earlier of the commencement of trial or the final resolution of the action by settlement. From the time he was engaged until he stopped work because settlement had been reached, Gavron billed $244,355.00 for professional service fees for himself and his assistants and $986.29 for expenses. Gavron was paid a total of $53,486.29 during the course of his work, in the form of the monthly retainer and expense reimbursement by plaintiffs' counsel, leaving $191,855.00 outstanding.

Princeton Venture Research ("PVR") was retained to provide expert analysis and testimony on the issue of damages. PVR was also charged with the preparation of various exhibits in support of the testimony PVR experts were expected to give at trial. Like Gavron, PVR was to be paid upon the earlier of commencement of trial or final resolution of the action. PVR billed plaintiffs' counsel $93,450.00 for professional services and $1,102.10 in expenses, totaling $94,552.10. PVR has not been paid any amount by plaintiffs' counsel.

After the settlement accord was reached, plaintiffs' counsel in both the class action and derivative action submitted requests for attorneys' fees and expenses. Those requests were the genesis of this court's previous opinion in this action, *In re Fleet/Norstar*, 935 F.Supp. 99. Given the absence of adversity between the parties once settlement of the actions had been reached, the court appointed Attorney Gordon P. Cleary as Guardian Ad Litem for class plaintiffs on the attorneys' fee issue. *Id.* at 104–05. The guardian has continued to serve in this capacity during the determination of the expert witness expense issue.

When counsel made their supplemental request for payment or reimbursement of retained expert fees and expenses, the court submitted to plaintiffs' counsel a request for specific information necessary to decide the issue. Counsel replied to this request and submitted additional documentation in support of the request. The Guardian Ad Litem reviewed this information and provided the court with his objections to the request for payment or reimbursement. Counsel responded to the Guardian Ad Litem's objections and the Guardian Ad Litem replied in turn.

Federal Rule of Civil Procedure 23, which governs class actions, provides in relevant part that "a class action shall not be dismissed or compromised without the approval of the court" Fed.R.Civ.P. 23(e). As previously pointed out, resolution of this issue is an essential part of the settlement of this action, and therefore, the determination of this issue is also governed by this rule. *Id.* This court must determine whether each claimed expense is "fair, adequate, and reasonable." *See Durrett v. Housing Auth. of City of Providence*, 896 F.2d 600, 604 (1st Cir.1990). The parties do not dispute that allowance of expert fees and expenses is measured by the same "reasonableness and necessity" test as is used to determine counsel fees. *See Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 951–52 (1st Cir.1984); *see also Steiner v. Hercules*, 835 F.Supp. 771, 792 (D.Del.1993).

▮ Fundamentally, attorneys' fees and expenses are awarded in class action suits, whether brought to trial or resolved through settlement, for the effort and expense plaintiffs' counsel are put to in creating, preserving or protecting a fund or property for the benefit of the class. *In re Nucorp Energy, Inc.*, 764 F.2d 655, 661 (9th Cir.1985); *Rothfarb v. Hambrecht*, 649 F.Supp. 183, 237 (N.D.Cal.1986). The fees and expenses are therefore paid from the fund itself *In re Chambers Development Securities Litigation*, 912 F.Supp. 852, 859 n. 7 (W.D.Pa. 1995). The result of this method of payment is that each person who benefits from the creation of the fund bears a proportionate part of the expenses required for its creation or preservation. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, 100 S.Ct. 745, 749, 62 L.Ed.2d 676 (1980); *Holbrook v. Pitt*, 748 F.2d 1168, 1176 (7th Cir.1984); *Rothfarb*, 649 F.Supp. at 237. Since the class ostensibly benefits both from the commitment of lawyers' time to the project and from the employment of experts and preparation of trial

**158**

exhibits, both fees and expert witness expenses may be reimbursed. *Spicer v. Chicago Bd. Options Exchange, Inc.*, 844 F.Supp. 1226, 1259 (N.D.Ill.1993); *In re SmithKline Beckman Corp. Securities Litigation*, 751 F.Supp. 525, 534 (E.D.Pa.1990).

■ In approving fee and expense requests, the court seeks to avoid unjust enrichment of the class plaintiffs. *Gottlieb v. Barry*, 43 F.3d 474, 482 (10th Cir.1994). By the same token, fees and expenses may only be taxed against the fund for services which provide actual benefit to the class. *In re Nucorp Energy*, 764 F.2d at 661; *In re Washington Public Power Supply System Securities Litigation*, 779 F.Supp. 1063, 1094 (D.Ariz.1990). It would be as inequitable to allow attorneys to inflate their fees and expenses to the detriment of the class members as to allow class members to enjoy the avails of the litigation without paying the necessary costs. *Id.*

■ As a practical matter, a serious conflict exists between class members and their attorneys, once settlement is reached and the attorneys seek payment or reimbursement of expenses and payment of fees. *See, e.g., Rothfarb*, 649 F.Supp. at 237; *In re Chambers Development*, 912 F.Supp. at 863. Given that the defendants generally have no interest in this issue, in that they have already paid out the amount of the settlement and have no concern with how the fund is distributed, the court is left without the benefit of adversarial presentation of the issues of fees and expenses. *See id.* Therefore, determination of these issues demands heightened judicial scrutiny. *Weinberger v. Great Northern Nekoosa Corp.*, 925 F.2d 518, 526 (1st Cir.1991); *In re Fine Paper Antitrust Litigation*, 840 F.2d 188, 195–96 (3d Cir.1988). The court is in the position of a fiduciary with respect to the class members, who are essentially unrepresented. *In re Brooktree Securities Litigation*, 915 F.Supp. 193, 196 (S.D.Cal.1996), *quoting In re Washington Public Power Supply*, 779 F.Supp. at 1083; *Mokover v. Neco Enterprises, Inc.*, 785 F.Supp. 1083, 1086 (D.R.I.1992).

■ The burden of proving entitlement to fees and expenses from the common fund therefore rests on the petitioning attorneys. *In re Washington Public Power Supply System Securities Litigation*, 19 F.3d 1291, 1305 (9th Cir.1994). Attorneys are clearly not entitled to reimbursement of expenses where the request is for an amount which is excessive or otherwise noncompensable. *Democratic Central Committee v. Washington Metropolitan Area Transit Commission*, 12 F.3d 269, 272 (D.C.Cir.1994). Noncompensable expenses include those which are not adequately supported by detailed records showing the amount of each expense, the reason for the expenditure, and the relationship between the expense and some reasonable benefit to the class. *See, e.g., Great Northern Nekoosa*, 925 F.2d at 527; *In re Brooktree Securities*, 915 F.Supp. at 200; *Spicer*, 844 F.Supp. at 1256–57; *In re Washington Public Power Supply*, 779 F.Supp. at 1095.

Under the circumstances of this action, plaintiffs' counsel's fee requests must be discounted for several reasons. The record fails to document adequately many of the claimed expenses. *See id.* Moreover, the record, if incomplete, reveals several instances of excessive use of high-level, high-cost expert personnel, where lower-level and lower-cost personnel would have been able to accomplish the same result for the class, but at a lesser expense. *See Spicer*, 844 F.Supp. at 1247; *Mokover* 785 F.Supp. at 1091; *In re Washington Public Power Supply*, 779 F.Supp. at 1143. The record also demonstrates several instances of "outsourcing" to experts work which should have been performed by attorneys or legal support staff. *See In re Media Vision Technology Securities Litigation*, 913 F.Supp. 1362, 1367 (N.D.Cal.1996). Further, there is one example of an expert charging fees for investigation of a "blind alley," which provided no benefit to the class whatsoever. *See Spicer*, 844 F.Supp. at 1261.

■ With respect to the fee request for Gavron's work, the Guardian Ad Litem raised two primary objections: 1) that the work of Gavron's assistants was documented inadequately at the time it was ongoing and 2) that Gavron's work either duplicated or substituted for work which, in the interest of

maximizing the return available to the class, should have been performed by attorneys or legal support personnel. *See Great Northern Nekoosa*, 925 F.2d at 527 (adequate contemporaneous time records required); *In re Brooktree Securities*, 915 F.Supp. at 200 (same); *Spicer*, 844 F.Supp. at 1256–57 (same); *In re Washington Public Power Supply*, 779 F.Supp. at 1095 (same); *In re Media Vision*, 913 F.Supp. at 1367 (duplication or substitution of legal work by expert witness not compensable expense, because it does not benefit class). The Guardian Ad Litem also points out a charge made by Gavron for investigation of what turned out to be an error caused by an unclear photocopy, which the Guardian Ad Litem regards as a "wild goose chase."

Mr. Gavron confirmed the generally non-specific nature of his time records. In a letter to plaintiffs' counsel dated June 3, 1997, he states "Since my daily time records do not reflect time spent on each task, I can not (sic) tell you precisely how much time was devoted to the drafting of deposition outlines." In the same letter, Gavron stated that a spiral notebook used to record time charges of his assistants "has long been lost or otherwise discarded." Mr. Gavron has submitted what are represented to be copies of portions of the now apparently discarded or lost records.

The Guardian Ad Litem points out that Gavron's assistants could have and should have, "given the context of the case and the nature of their assignments ... documented their time, described their services, and related their work to the overall litigation effort." Guardian Ad Litem's Supplemental Objection to Request for Payment or Reimbursement for Expert Witness Fees at 5 ("Supplemental Objection"). The Guardian points out that Gavron's time records show Gavron's supervision of his assistants and review of their work, but that Gavron's records are no substitute for contemporaneous records of the assistants. *Id.* Plaintiffs' counsel's attempt to correct this deficiency by providing "recently discovered," but allegedly contemporaneous time records made by the assistants, corroborating Gavron's time records, does not meet counsel's burden of

persuasion on this issue. *See In re Washington Public Power Supply*, 19 F.3d 1291, 1305 (9th Cir.1994). Plaintiffs' counsel's request for payment or reimbursement of these fees therefore must be discounted.

The Guardian Ad Litem questions also whether all of Gavron's effort was necessarily provided by him and his staff, as experts in accounting, rather than by well-informed legal personnel. The Guardian Ad Litem carefully and closely reviewed the deposition outlines prepared by Gavron, for example, and found that much of the material contained in these outlines should have been prepared by counsel, rather than by experts. Supplemental Objection at 6 ("The outlines ... are not confined to issues requiring full or even substantial accounting expertise. The outlines display work-preparation for discovering information-traditionally performed by lawyers or paralegals schooled in the theory of the case and keen to the evidence or information sought."). Although plaintiffs' counsel suggest that the distinctions drawn by the Guardian Ad Litem were not well founded, the Guardian Ad Litem's response points out that these distinctions are appropriately made, for example to distinguish between questions concerning "whether the rules were followed," which should have been prepared by counsel, and questions concerning "whether the rules, even if followed, yielded sound and reliable [information]," which required expert assistance. Guardian Ad Litem's Reply to Class Counsel's Response to Supplemental Objection at 2 ("Guardian's Reply"). The Guardian Ad Litem's analysis of this work appears sound, and his recommendation that Gavron's fee request be reduced on this basis is appropriate.

Plaintiffs' counsel object also to the Guardian Ad Litem's recommendation that Gavron's fee be discounted for a "wild goose chase" caused by a poor-quality photocopy which made a $2.4 million entry appear to be a $24 million entry. Plaintiffs' counsel's argument that cutting with too fine an edge into an expert's fee could have the effect of "chilling" thorough investigation by experts, for fear of not being compensated if their research does not prove productive is not unpersuasive, but neither is it entirely on

point. *See* Class Plaintiffs' Response to Guardian Ad Litem's Supplemental Objection Regarding Expert Fees at 9 ("Class Plaintiffs' Response"). The Guardian Ad Litem's criticism is less that this avenue was unproductive for the class, than that it was caused by the expert's inattention. If Gavron or his assistant had looked more closely, they would have realized after a short time that the entry was not for $24 million, as they had supposed, but $2.4 million, and therefore would not have wasted any time on the issue. Guardian's Reply at 4. The Guardian Ad Litem recommends discounting Gavron's fee request by 14 hours for the time wasted, and plaintiffs' counsel suggests that if any adjustment need be made it should be more on the order of a four hour reduction.

The dispute between the Guardian Ad Litem and plaintiffs' counsel with regard to the amount of this reduction reveals a further difficulty in determining to what extent plaintiffs' counsel's expert witness fees and expenses should be paid or reimbursed. Particularly where, as here, an exact adjustment cannot be made because the records are "inadequate to make such a determination with exactitude," the court must make an adjustment which reflects the fair and reasonable value of services actually rendered to the class. *See Mokover,* 785 F.Supp. at 1090; *see also J/H Real Estate v. Abramson,* 951 F.Supp. 63, 66 (E.D.Pa.1996); *Spicer,* 844 F.Supp. at 1260. This adjustment may be accomplished by determining generally what percentage of the total work actually inured to the benefit of the class and reducing the total fee by the percentage which did not. *Mokover,* 1090. Under these circumstances, given the lack of sufficiently detailed contemporaneous time records of work performed by Gavron's assistants, the unnecessary duplication of and substitution for legal work by Gavron and his staff, and the time and effort wasted because of this expert's unnecessary pursuit of information, the fee award payable by the class shall be 75% of the fee requested, or $183,266.25 plus expenses of $986.29, for a total of § 184,252.54 including payments to be made and reimbursement of amounts already paid.

■ With respect to Princeton Venture Research's work, the Guardian Ad Litem's criticism is three-fold: 1) time records and other supporting information are "artificial, in the sense the work descriptions are cryptic, typically lacking references that connect one PVR employee's effort to another PVR employee's and show a pattern of performance by fits and starts, rather than a consistently developing project," 2) too much work was performed by PVR employees working at the "high-end" of PVR's scale of rates, and 3) PVR wastefully prepared trial exhibits too far in advance. Supplemental Objection at 9–10; *see also Great Northern Nekoosa,* 925 F.2d at 527 (inadequate documentation of fees); *In re Brooktree Securities,* 915 F.Supp. at 200 (same); *See Spicer,* 844 F.Supp. at 1247 (excessive use of high-level and expensive personnel); *Mokover,* 785 F.Supp. at 1091 (same). *In re Washington Public Power Supply,* 779 F.Supp. at 1143 (same). Plaintiffs' counsel's attempts to justify the criticized fee amounts are unavailing. For example, while plaintiffs' counsel suggests that PVR personnel, because of their considerable experience in litigation support services, could prepare trial exhibits without guidance from counsel, the Guardian Ad Litem's criticism was at least as much that the preparation of trial exhibits at the point these were created was premature in any event. Class Plaintiffs' Response at 13; Guardian's Reply at 5. Therefore, because of the inadequacy of time keeping records and for the reasons documented in the Guardian Ad Litem's Supplemental Objection and his Reply, the amount of PVR's fee and expenses payable by the class fund will be 60% of the requested fee and 25% of the requested expenses, or $56,345.53 total.

The court has entered and filed a Final Judgment and Order in this action, consistent with this and the foregoing orders of this court. Plaintiffs' counsel shall bear their own costs with regard to their application for fees and expenses in this action. The fee and expenses of the Guardian Ad Litem shall be borne one-half each by the class fund and defendant Fleet/Norstar Financial Group, Inc., as this court has ordered previously.