In re QUANTUM HEALTH RE-
SOURCES, INC. Securities
Litigation.

No. SA CV 95–173–FLT[CC].

United States District Court,
C.D. California.

May 1, 1997.

Edward P. Dietrich, Michael D. Braun, Stull, Stull & Brody, Los Angeles, CA, for Plaintiffs.

John M. Newman, Jr., Richard I Werder, Jr., Geoffrey J. Ritts, Cleveland, OH, Thomas R. Malcolm, Michael D. Fabiano, Irvine, CA, for Defendant.

### REVISED ORDER APPROVING PLAN OF ALLOCATION AND SETTLEMENT AND AWARDING ATTORNEYS FEES AND EXPENSES

TAYLOR, District Judge.

The court finds there is no inherent risk of attorneys fee non-recovery in securities class action suits. Thus, the court finds it appropriate in securities class actions to depart significantly from the Ninth Circuit's "benchmark" 25½ fee award unless the court finds there is actual risk.

### I. *BACKGROUND*

Class actions were filed against Quantum Health Resources, Inc. and various officers and directors alleging violations of §§ 10(b) and 20(b) of the Securities Exchange Act of 1934 and Rule 10b—5 promulgated thereunder.[1] Plaintiffs alleged Quantum made materially false and misleading public statements to maintain an artificially high market price for Quantum securities. According to Plaintiffs, Quantum knowingly withheld information about improper billing practices, and falsely inflated its revenues, operating income and earnings in public statements.

During the fourteen months between filing and settlement, Plaintiffs engaged in written discovery, consisting mainly of requesting the production of documents from Quantum and third parties. Other than a partly successful motion to compel production of certain documents, there. was no law and motion practice.

The parties settled for $10 million, and the court preliminarily approved the settlement. Class counsel[2] now seek recovery of 30% of the settlement, or $3 million, as attorneys fees, plus expenses. No class member opposed the settlement terms before the settlement hearing. However, at the settlement hearing one class member objected to the proposed attorneys fee award.

The court took the matter under submission to consider an appropriate attorneys fee award.[3] At the court's request, Plaintiffs' counsel and the objecting class member submitted supplemental declarations and briefing. Following issuance of an order deciding this matter, Plaintiffs' counsel moved for partial reconsideration, raising several helpful observations and authorities. The motion for reconsideration is GRANTED, and the additional matters have been considered. The court now vacates its March 5, 1997 order and issues this revised order.

### II. *DISCUSSION*

This court shares the concerns of numerous other courts about the method by which

---

1. The first class action, *Colanero Equipment Co. 401(k) Plan. et al. v. Quantum Health Resources. Inc., et al,* (SA CV 95–173–GLT(EEx)) was followed by *Sternberg v. Quantum Health Resources. et al.* (SA CV 95–173–GLT(EEx)) and *Much. Shelist. Freed, Darienhera & Ament, P.C., etc. v. Quantum Health Resource, et al.,* (SA CV 95–213–GLT(EEx)). The court consolidated the three actions under the heading *In re Quantum Health Resources, Inc. Securities Litigation* (SA CV 95–173–GLT(EEx)). Another related action filed after the consolidation, *Stockhus v. Quantum Health Resources. Inc. et al.* (SA CV 95–842–GLT(EEx)), has also been consolidated for purposes of the settlement under this caption and case number.

2. The Class is represented by ten law firms:
   Milberg Weiss Bershad Hynes & Lerach LLP (lead counsel)
   Barack, Rodos & Bacine
   Chimicles, Jacobsen & Tikellis
   Goodkind Labaton Rudoff & Sucharow, LLP
   Hagens & Berman
   Law Offices of Lionel Z. Glancy
   Law Offices of Miles M. Tepper
   Prongay & Borderud
   Starr & Holman LLP
   Weiss & Yourman

3. The class member also claimed he failed to receive timely notice of the settlement and hearing. After examining the parties' supplemental briefing and declarations and the Ninth Circuit's decision *Torrisi v. Tucson Elec. Power Co.,* the court concludes notice was sufficient. *See* 8 F.3d 1370, 1375 (9th Cir.1993) ("If an individual shareholder later claims he did not receive adequate notice and therefore should not be bound by the settlement, he can litigate that issue on an individual basis when the settlement is raised as a bar to a lawsuit he has brought.")

attorneys fees are calculated and awarded in securities class action settlements. *See, e.g., In re Oracle Securities Litigation,* 131 F.R.D. 688 (N.D.Cal.1990); *In re Activision Securities Litigation,* 723 F.Supp. 1373 (N.D.Cal.1989); Report of the Third Circuit Task Force, *Court Awarded Attorney Fees,* 108 F.R.D. 237 (3d Cir.1985). In the vast majority of cases, Class counsel appears before the court to request a big percentage of the settlement fund, cooperative settling Defendants offer no opposition, and class members rarely oppose the request.[4] "[T]he court is abandoned by the adversary system and left to the plaintiff's unilateral application and the judge's own good conscience." *Activision,* 723 F.Supp. at 1374.[5] The situation is a fundamental conflict of interest and is inherently collusive.[6] The lack of opposition to a proposed fee award gives a court the sometimes false impression of reasonableness, and the court might simply approve a request for fees without adequate inquiry or comment.

■ In the absence of a better system, the district court has a duty to the individual class members to ensure the requested fee award is reasonable under the circumstances.[7] *In re Washington Publ. Power Supply Sys. Sec. Litig.,* 19 F.3d 1291, 1302 (9th Cir.1994); *Court Awarded Attorney Fees,* 108 F.R.D. at 255; *see also In re Washington Publ. Power Supply Sys. Sec. Litig.,* 779 F.Supp. 1063, 1083 (D.Ariz.1990) ("It is obligatory, therefore, for the trial court judge to act with 'a jealous regard to the rights of those who are interested in the fund' in determining what a proper fee award

is." (citing *Trustees v. Greenough,* 105 U.S. 527, 536, 26 L.Ed. 1157 (1881))). At the same time, however, a court must recognize the Supreme Court's admonition that "a request for attorneys' fees should not result in a second major litigation." *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983).

### 1. *Attorneys Fees*

■ When calculating fee awards in common fund cases, the court has discretion to choose the percentage-of-the-fund method or the lodestar-multiplier method. *Washington Publ. Power Supply,* 19 F.3d.at 1296. The choice between the two methods depends on the circumstances of the case. *Id.* at 1295–96 (citing *Six Mexican Workers v. Arizona Citrus Growers,* 904 F.2d 1301, 1311 (9th Cir.1990)). "Fee awards out of common funds must be 'reasonable under the circumstances.'" *Id.* at 1296 (quoting *Florida v. Dunne,* 915 F.2d 542, 545 (9th Cir.1990)).

### A. *Choice of Method*

■ Class counsel argue the court should apply the percentage-of-the-fund method Counsel contend the percentage method encourages the efficient resolution of cases at an early stage of litigation. The lodestar method, on the other hand, creates an incentive to keep litigation going in order to maximize the number of hours included in the court's lodestar calculation. Supplemental Memorandum at 13. The court agrees

Courts and commentators have been wary of the lodestar method since its introduction

---

4. One commentator has described these settlement hearings as "pep rallies jointly orchestrated by plaintiffs' counsel and defense counsel." Jonathan R. Macey & Geoffrey P. Miller, *The Plaintiffs' Attorney's Role in Class Action and Derivative Litigation: Economic Analysis and Recommendations for Reform,* 58 Univ. Chi. L.Rev. 1, 46 (1991). Because the parties want the settlement to be approved, each has every incentive to present it as fair: "The deck is heavily stacked toward approval of the settlement." *Id.* at 47.

5. Courts' frustration in making an appropriate fee award in the face of a conclusionary and superficial presentation by class counsel is reflected in *In re Brooktree Securities Litigation,* 915 F.Supp. 193 (S.D.Cal.1996).

6. For example, if this Order were appealed, no advocate would likely appear before the Ninth Circuit to support this Order unless the appellate court appointed appellate counsel or an amicus took an interest.

7. Creative judicial efforts to ensure a reasonable fee are collected in Federal Judicial Center, *Awarding Attorneys' Fees and Managing Fee Litigation* 95–106 (1994). Examples include requiring class counsel to submit a pretrial estimate of the work they anticipate the case will involve, negotiating a contingency fee rate at the start of the case, requiring an estimated budget of professional fees, and selecting class counsel through competitive bidding.

by the Third Circuit in *Lindy Brothers Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161 (3d Cir.1973). *See Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1271 (D.C.Cir. 1993) (requiring the use of the percentage method in common fund cases); *Activision*, 723 F.Supp. at 1375; *Mashburn v. National Healthcare, Inc.*, 684 F.Supp. 679, 689–91 (M.D.Ala.1988) (cataloguing recent criticisms of the lodestar approach to fee calculation); John C. Coffee, Jr., *Understanding the Plaintiff's Attorney: The Implications of Economic Theory for Private Enforcement of Law Through Class and Derivative Actions*, 86 Colum. L.Rev. 669, 724–25 (1986). As critics have noted, the lodestar method needlessly increases judicial workload, creates disincentive for early settlement, and causes unpredictable results. *Court Awarded Attorney Fees*, 108 F.R.D. at 246–49. The court agrees with these criticisms.[8] Use of the percentage method of fee calculation is appropriate in this case.

### B. *Fee Calculation*

The amount of a common fund fee award historically was determined through the exercise of the court's discretion based on a standard of reasonableness under the circumstances. *See Central Railroad & Banking Co. v. Pettus*, 113 U.S. 116, 5 S.Ct. 387, 28 L.Ed. 915 (1885); *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184 (1939). As courts acquired more experience in awarding fees from common funds, fee patterns began to reflect a percentage award of the common fund recovered. A. Conte, *Attorney Fee Awards* § 2.02. In 1989, the Ninth Circuit set 25% as the "benchmark" for common fund fee

awards. *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir.1989).

The rationale behind awarding a percentage of the fund to counsel in common fund cases is the same that justifies permitting contingency fee arrangements in general. *See Skelton v. General Motors Corp.*, 860 F.2d 250, 252 (7th Cir.1988). The underlying premise is the existence of risk—the contingent risk of non-payment. As one commentator has observed:

> Lawyers engaged in a contingent common fund fee award case must similarly invest time and money—usually a large multiple of expenditures that are experienced in individual cases—without payment or guarantee of payment.... [T]he court, in its discretion, should award a fee that is higher than strictly an hourly fee for non-contingent services, *to compensate the lawyer for assuming this large contingent risk of nonpayment* when the lawyer has performed and expended monies for the benefit of the class....

A. Conte, *Attorney Fee Awards* § 1.09 (emphasis added); *see also* F. MacKinnon, *Contingent Fees For Legal Services* at 28 (1964) ("the size of the [contingent] fee is designed to be greater than the reasonable value of the services in the individual case, the difference reflecting the fact that the lawyer will realize no return for his investment of time and office expenses in the cases he loses."). Because payment is contingent upon receiving a favorable result for the class, an attorney should be compensated both for services rendered and for the risk of loss or nonpayment assumed by accepting and prosecuting the case.[9]

■ For a contingent fee to be appropriate, therefore, there must be a realistic risk

---

**8.** Some authorities maintain it is appropriate for a district court to compare what would be the lodestar fee to the percentage fee as a measure of an award's reasonableness in a common fund case. *See In re: Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litigation*, 109 F.3d 602 (9th Cir.1997). This may, however, be a faulty analysis. The whole point in using the percentage fee calculation method is to avoid the lodestar calculation, with its incentive to keep the litigation going. Nevertheless, the fee awarded here under the percentage system exceeds counsels' hourly rate claim.

**9.** The existence of risk is also the underlying premise in the lodestar method for computing attorneys fees in common fund cases. Once a court tabulates the total hours counsel spent working on a case, it increases the figure by a "risk multiplier" to compensate counsel for the contingency of non-payment. *See Washington Public Power Supply Sys. Lit.*, 19 F.3d at 1302; A. Conte, *Attorney Fee Awards*, § 2.03.

of nonrecovery. The Ninth Circuit's 25% benchmark assumes a genuine degree of risk.

■ However, experience is showing there is no inherent risk in the large majority of securities class actions suits. In fact, representatives of lead Class counsel in this action have stated publicly these cases present little risk of nonrecovery. Carole Kahn, *The Big–Stakes Battleground of Shareholder Suits*, New York Times, Jan. 10, 1988e section 3, page 13 (quoting Melvyn I. Weiss of Milberg Weiss as saying losses in these cases are few and far between.); Paul D. Freeman, *The World of Shareholder Litigation According to Bill Lerach*, California Lawyer, Apr. 1989, at 48–49 (quoting William S. Lerach of Milberg Weiss as stating his firm "achieves a significant settlement although not always a big legal fee, in 90% of the cases we file.").[10]

These cases routinely end in settlement, and attorneys representing the class routinely recover attorneys fees in the range of 20 to 40 percent of the common fund. *See* Declaration of Keith F. Park in Support of Application for Award of Attorneys Fees and Reimbursement of Expenses (cataloguing settlements and fee awards in securities class actions pursued by lead counsel Milberg Weiss); *see also* A. Conte, *Attorney Fee Awards* § 2.33.

Studies have produced empirical evidence showing there is little risk in these cases. *See, e.g.,* Janet Cooper Alexander, *Do the Merits Matter? A Study of Settlements in Securities Class Actions,* 43 Stan. L.Rev. 497, 525 (1991) (reviewing studies and concluding "all evidence indicates that the settlement rate for securities class actions is much higher than for civil litigation generally."); Thomas M. Jones, *An Empirical Examination of the Resolution of Shareholder Derivative and Class Action Lawsuits,* 60 B.U. L.Rev. 542 (1980).

The court finds there is no inherent risk of attorneys fee non-recovery in securities class action suits.[11]

Lacking the underlying premise that these cases are inherently risky, it is appropriate for a court to depart significantly from the 25% benchmark created by the Ninth Circuit

---

10. To distinguish their partners' earlier remarks, Plaintiffs' counsel argue it is more difficult to pursue securities litigation in the 1990's than it was in the 1980's, and "there is general agreement that courts terminate securities litigation in the 1990's far more frequently than they did even in the recent past." The answer is that courts *should* dispose of a meritless case, and this should not necessarily be considered an "inherent risk" of litigation. Nor does counsels' reference to three appellate reversals of the large number of securities class action cases lend strong support to a conclusion of inherent riskiness.

11. The court does not find all securities class actions lack risk. The court simply finds a broad-brush conclusion of inherent risk is not justified.

In opposing the court's conclusion, Class counsel cite Judge Richard Posner's opinion in *In re Continental Illinois Sec. Litig.,* 962 F.2d 566, 569–570 (7th Cir.1992).

In *Continental Illinois,* the Seventh Circuit reversed a district court's award of attorney fees and costs. In particular, the court held the district judge improperly denied class counsel a risk multiplier on the ground there was no risk of the suit's failing. The Seventh Circuit stated:

The [trial] judge ... said there was no need for any contingency adjustment here because there was no contingency—the risk of the suit's failing was zero. He based this surmise on the fact that most suits, including most class actions, are settled rather than abandoned or decided adversely to the plaintiff—that most plaintiffs therefore get something for having sued—and that [defendant's] shenanigans with respect to its Penn Square loan portfolio had been thoroughly aired in congressional hearings held and widely publicized before these suits were filed. These are not adequate reasons. Most suits settle for something—have, at the very least, some nuisance value—but the question is, settle for how much? The high-priced lawyers for the class put in thousands of hours before they achieved a settlement.... That after years of stubborn negotiation [defendants] doubtless would have been willing to pay something to get the case off their backs does not imply that class counsel were certain to obtain a settlement entitling them to a fee commensurate with their efforts. They could have lost everything, because there was considerable doubt whether Continental had actually made any material misrepresentations.

*In re Continental Illinois Sec. Litig.,* 962 F.2d at 569–70.

This court's conclusion is not inconsistent with *Continental Illinois.* The requirement of a showing of risk in a particular case avoids the danger of "systematic undercompensation of plaintiffs' counsel," *Id.* at 569, that concerned the *Continental Illinois* court. When a case is found to be risky, counsel will be compensated for undertaking that risk.

for attorneys fees in common fund cases, unless genuine risk exists in a particular securities class action case. *See Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d at 272. This court will not simply rubber stamp fee award requests substantially in excess of the value of services allegedly performed without a showing of the circumstance traditionally held to justify that excess—a genuine risk of nonrecovery. *See Blum v. Stenson*, 465 U.S. 886, 900, 104 S.Ct. 1541, 1549–50, 79 L.Ed.2d 891 (1984) (holding an upward adjustment of attorneys fees for the contingent nature of civil rights litigation was not justified without identification of risks associated with the litigation); *Skelton v. General Motors Corp.*, 860 F.2d at 258 ("[T]o account for the contingent nature of the compensation, a court should assess the riskiness of litigation.").

█ It is appropriate for the court to conduct an independent risk assessment to determine the genuine degree of risk in this case. The court could appoint an independent master or expert to assess the risk and advise the court. The court could appoint special class counsel to represent the class on the fee issue, advise concerning risk, and critique regular class counsel's fee application. Or, the court can make its own determination of risk. Upon review of the nature of this case, the court concludes it is appropriate for the court to conduct its own risk assessment.

In making this assessment, the materials submitted by Class counsel are not particularly helpful. The memorandum in support of the fee application contains only conclusory statements of risk, complication, and success, without supporting factual analysis.[12] Counsel was warned against this kind of presentation in *In re Brooktree Securities Litigation*, 915 F.Supp. 193 (S.D.Cal.1996), but counsel has chosen to do it again.

From its own observations, the court can assess the risk in this case. This was a relatively simple case in which the securities law violations were apparent. The minimal law and motion practice conducted by the parties supports this conclusion.[13] The facts of this case weighed heavily in the Class' favor from the start, largely because the material allegations of the complaint were supported by the unequivocal results of public investigations conducted by the California State Controller's Office and the California Department of Health Services, as well as significant public admissions by Quantum. Consolidated Amended Class Action Complaint at ¶¶ 73–83. The facts of this case do not reflect counsel were under any significant risk of non-payment when they undertook Plaintiffs' claims against Quantum. No real showing to the contrary is made.

In light of the above, the 30% fee requested by counsel is not justified in this case. The court finds a fee award of 10% of the common fund, awarded on the net award to the class (*i.e.*, after deduction for costs and expenses), is appropriate. The court has considered the actual risk involved, the nature and facts of the case, and comparable recoveries in other cases. This will adequately compensate counsel for the work performed.

### 2. *Reimbursement for Costs and Expenses*

█ Under the common fund doctrine, Class counsel is entitled to reimbursement for reasonable out-of-pocket expenses and costs in obtaining a settlement. *Vincent v. Hughes Air West Inc.*, 557 F.2d 759, 769 (9th Cir.1977). Here, Class counsel has requested reimbursement for $304,761.77 in costs and expenses. After reviewing the declarations submitted by Class counsel in support of this request, the court concludes Class counsel is entitled to reimbursement for $75,472.78 in costs and expenses.

---

12. In support of their request for 30% of the settlement, Class counsel have submitted a list of class action settlements where courts made fee awards in excess of the amount requested here. Without some comparative analysis of the facts of those cases, a list of other fee awards is not reason to approve counsel's proposed fee award in this case.

13. Although class counsel attributes the lack of law and motion practice to its skillfully drafted complaint, the court concludes it was more likely due to the clarity of liability.

 Class counsel asks to be reimbursed $146,397.55 for fees paid to its primary expert, John Torkelson of Princeton Venture Research, Inc. Mr. Torkelson's declaration states his firm spent 653.00 hours on this case, which amounts to a fee of $145,195.00 for its services.[14] However, he fails to provide any breakdown of the hours expended, *i.e.*, which members of his firm performed which tasks for what hourly rate. As a result, the court cannot determine what portion of this fee, if any, is reasonable under the circumstances. *See Brooktree*, 915 F.Supp. at 200.

When requesting supplemental briefing, the court specifically requested a detailed accounting of all claimed expenses, including compensation of experts. This was not provided for Mr. Torkelson. In *Brooktree*, the same Class counsel failed to provide the same requested information for Mr. Torkelson, and was thereafter denied any recovery for the claimed expense. For the same reason, recovery for Mr. Torkelson's claimed expense is denied here.

 Class counsel also requests reimbursement for $82,891.44 in expenses incurred for paralegal and word processing costs.[15] The court concludes these are not separately reimbursable costs, and denies Class counsel's request for reimbursement of these expenses. *See Morganstein v. Esber*, 768 F.Supp. 725, 726–27 (C.D.Cal.1991). Paralegals should be treated as associates or other salaried professionals, with their compensation included in the awarded percentage fee. Word processing expenses are like other in-house clerical costs, and are included in the overhead built into the percentage fee. *Id.*

After examining the declarations submitted by Class counsel in support of the remaining $75,472.78 in costs and expenses requested by Counsel, the court concludes these costs were reasonably expended in the representation of the Class.

**14.** Mr. Torkelson also states his firm incurred costs of $1,202.55 in connection with this case. The court finds this amount reasonable under the circumstances. *See In re Brooktree Securities* at 200.

### III. *DISPOSITION*

The court APPROVES the parties Stipulation of Settlement and Plan of Allocation. The court ORDERS Class counsel be awarded $992,452.72 in attorneys fees and $75,472.78 in costs and expenses, each to be paid from the Settlement Fund.

**15.** This figure is an aggregate of the paralegal and word processing costs requested by each participating law firm in declarations submitted to the court.