Margaret & Timothy FOURNIER, William & Margaret Stanfel, William & Beverly Stanfel, Don Schimmel, Michael P. & Michelle Murphy, Ray M. Finny, Lawrence W. Eisenberg, individually, and on behalf of all others similarly situated, plaintiffs,

v.

PFS INVESTMENTS, INC. and Primerica Financial Services, Inc., Defendants.

Nos. 95–70293, 95–73017 and 95–75241.

United States District Court,
E.D. Michigan,
Southern Division.

Jan. 26, 1998.

Kenneth B. McClain, Independence, MO, Michael B. Sterling, Birmingham, MI, Michael P. Marsalese, Bloomfield, MI, D. Michael Kratchman, Southfield, MI, for Plaintiffs.

## ORDER

GILMORE, District Judge.

**THE COURT,** having considered the Report and Recommendation of Magistrate

Judge Virginia Morgan regarding Plaintiff's Application for Attorney Fees and Costs, having considered Co–Lead Counsel's Objections to the Magistrate's October 30, 1997 Report and Recommendation on Plaintiff's Application for Attorney Fees and Costs, filed on November 10, 1997; having heard oral argument on Thursday, January 22, 1998; and having been otherwise fully apprised in the premises:

**HEREBY ADOPTS** the Magistrate's recommendation that co-lead attorneys Kenneth McClain. Michael Kratchman and Michael Marsalese be awarded 20% of the settlement fund . based on the percentage of the fund method.

**IT IS ORDERED** that the attorneys shall receive $1,500,000, representing 20% of the settlement fund and that such percentage include all costs and those monies owed to attorneys Seymour and Kaufman as recommended by the Magistrate Judge.

**IT IS SO ORDERED.**

## REPORT AND RECOMMENDATION

MORGAN, United States Magistrate Judge.

This matter is before the court on plaintiffs' application for attorney fees and costs filed on July 10, 1997.

## I. BACKGROUND

This class action lawsuit was comprised of investors ("Plaintiffs") who purchased Basic Energy and Affiliated Resources ("BEAR") securities and alleged that defendants PFS Investments and Primerica ("Defendants") should be held liable for the losses they sustained because of investing in those securities. The parties reached a settlement agreement, subsequently approved by the Honorable Horace Gilmore, United States District Judge, on August 6, 1997. The settlement amount is $7.5 million dollars, out of which attorney fees are to be paid. Plaintiffs' counsel now applies for an award of one-third of the settlement fund. For the reasons set forth in this Report, it is recommended that co-lead attorneys Kenneth McClain, D. Michael Kratchman and Michael

Marsalese be awarded 20% of the settlement fund, based upon the percentage of the fund method, or in the alternative, be awarded $1,376,900 based upon the lodestar method of calculation. Both awards include (1) all costs, and (2) those fees owed to attorneys Robert Seymour and Jerry Kaufman as arranged pursuant to previously entered into substitution agreements.

## II. LEGAL ANALYSIS

■ This case involves a common fund arising out of a securities class action settlement. In a common fund case, the "fees are not assessed against the unsuccessful litigant (fee shifting), but rather are taken from the fund or damage recovery (fee spreading), thereby avoiding the unjust enrichment of those who otherwise would be benefited by the fund without sharing in the expenses incurred by the successful litigant." *Court Awarded Attorneys Fees*, Report of the Third Circuit Task Force, 108 F.R.D. 237, 250 (1985).

■ The two primary methods utilized by courts to calculate an appropriate attorney's fee are (1) lodestar and (2) percentage of the fund. "Use of either the lodestar or percentage of the fund method of calculating attorney's fees is appropriate in common fund cases, and the determination of which method is appropriate in any given case will depend upon its circumstances." *Rawlings v. Prudential–Bache Properties, Inc.*, 9 F.3d 513, 516 (6th Cir.1993). The Sixth Circuit generally accepts either method, and "require[s] only that awards of attorney's fees by federal courts in common fund cases be reasonable under the circumstances." *Id.* at 517 (citing *Smillie v. Park Chem. Co.*, 710 F.2d 271, 275 (6th Cir.1983)).

The magistrate judge notes the concern expressed by numerous courts regarding the method by which attorney fees are awarded and calculated in securities class action settlements. *See In re Quantum Health Resources, Inc. Securities Litigation*, 962 F.Supp. 1254 (C.D.Cal.1997) (collecting cases). In *Quantum Health*, the court recognized that:

"In the vast majority of cases class counsel appears before the court to request a big

percentage of the settlement fund, cooperative settling defendants offer no opposition, and class members rarely oppose the request. The court is abandoned by the adversary system and left to the plaintiff's unilateral application and the judge's own good conscience. [citation omitted] The situation is a fundamental conflict of interest and is inherently collusive.... The lack of opposition to a proposed fee award gives a court the sometimes false impression of reasonableness, and the court might simply approve a request for fees without adequate inquiry or comment."

*Id.* at 1255; *see also Rawlings,* 9 F.3d at 515. Thus, the district court has a duty to individual class members to ensure that the requested fee is reasonable, but that it does not engender a second major litigation. *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).

## A. Lodestar

■ The lodestar formula, articulated by the Supreme Court in *Hensley v. Eckerhart,* suggests "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.,* 461 U.S. at 433. In *Pennsylvania v. Delaware Valley Citizen's Council,* 483 U.S. 711, 727, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987), a clean air case, a plurality of the Supreme Court reaffirmed the position that "payment for the time and effort involved—lodestar—is presumed to be the reasonable fee authorized by statute, and enhancement for the risk of nonpayment should be reserved for exceptional cases where the need and justification for such enhancement are readily apparent and are supported by evidence in the record and specific findings by the courts." The Court found that enhancement of the attorney fee for risk of loss was inappropriate for litigation brought to enforce a consent decree under the Clean Air Act. *See also Blum v. Stenson,* 465 U.S. 886, 898–901, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). However, the

Sixth Circuit tacitly approved the use of the lodestar with the additional multiplier in *Rawlings v. Prudential–Bache Properties, Inc.,* a securities case, noting that the multiplier accounts for the inherent risk of litigation, the work product quality, and the public benefit achieved. 9 F.3d at 516 (affirming order by the Hon. Horace Gilmore). Thus, the "reasonable fee" by the lodestar formula would be calculated as follows:

(1) Reasonable hours expended on litigation $\times$ Reasonable hourly rate $=$ Y

(2) Y $\times$ Multiplier $=$ Reasonable Fee

■ The magistrate judge has reviewed the information submitted with respect to calculation of the rate and number of hours. The number of hours (3,442.25) is well within reason given the number of plaintiffs and the absence of a prior public investigation determining securities violations. *See In Re Continental Illinois Securities Litigation,* 962 F.2d 566, 569–70 (7th Cir.1992). The requested rate of $200 is also very reasonable. The lawyers have significant experience in securities matters and conducted this litigation efficiently and effectively. The hourly rate is below that utilized by this court in Rawlings where the rate was slightly more than $250/hour. *Rawlings,* 9 F.3d at 516. When co-lead counsel substituted for Robert Seymour, they entered into a series of contingent fee arrangements with the class action plaintiffs.[1] Counsel undertook a risk, in somewhat the same manner as had plaintiffs when they invested in BEAR. While in some cases this risk of loss may be subsumed in the lodestar and need not be the subject of a multiplier,[2] in securities cases a multiplier is appropriate. *See id.* In the case-at-bar, the lodestar method requires a multiplier in light of the $7.5 million dollar settlement obtained from parties other than BEAR.

The lodestar method should arguably be avoided in situations where such a common fund exists because it does not adequately acknowledge (1) the result achieved or (2) the special skill of the attorney(s) in obtaining that result. Courts and commentators have

---

**1.** "Courts have broad authority to refuse to enforce contingent fee arrangements that award excessive fees." *Green v. Nevers,* 111 F.3d 1295, 1302 (6th Cir.1997).

**2.** *See Pennsylvania v. Delaware Valley,* 483 U.S. at 727.

been skeptical of applying the formula in common fund cases. *Swedish Hospital Corp. v. Shalala*, 1 F.3d 1261, 1271 (D.C.Cir.1993) (requiring use of the percentage of the fund in common fund cases); *Mashburn v. National Healthcare, Inc.*, 684 F.Supp. 679, 689–91 (M.D.Ala.1988) (cataloging recent criticism of the lodestar approach to fee calculation); John C. Coffee, Jr., *Understanding the Implications of Economic Theory for Private Enforcement of Law Through Class and Derivative Actions*, 86 Colum.L.Rev. 669, 724–25 (1986). For these reasons, many courts have strayed from using lodestar in common fund cases and moved towards the percentage of the fund method which allows for a more accurate approximation of a reasonable award for fees.

Should the District Court determine that the lodestar method is appropriate, the undersigned recommends the use of a multiplier of 2, making the award $1,376,900. This is the same multiplier used by this court in other securities litigation and affirmed by this circuit. *See Rawlings*, 9 F.3d at 513. In addition, a multiplier is clearly justified where co-lead counsel made prompt use of facilitative mediation, with excellent results for the class. Such early recognition of alternatives to protracted litigation and creative resolution should be encouraged as a matter of public policy.[3] Further, by utilizing mediation the attorneys secured a settlement for the class that may not have been possible had the litigation run its normal course. While counsel requested a higher multiplier, a multiplier of 2 represents a fair enhancement for the special efforts of counsel and still allows a significant recovery for individual class members.

Therefore, should the District Judge decide to utilize the lodestar method, it is recommended that the award be $1,376,900, which represents the number of hours submitted (3,442.25) multiplied by a reasonable fee of $200 dollars per hour for a total of $688,450.00, enhanced by a multiplier of 2.

### B. Percentage of the Fund

The percentage of the fund method exists as an alternative in the context of class actions. Rather than the court's ascertaining a "reasonable fee," the attorney receives a percentage of the fund awarded to the class. The specific percentage is left to the court's discretion. While "the lodestar method better accounts for the amount of work done, ... the percentage of the fund method more accurately reflects the results achieved." *Rawlings*, 9 F.3d at 516. The benefits the percentage calculation provides are: (1) readily ascertainable fee amounts and (2) increased settlements. *Id.* The court is to determine the appropriate percentage based on a standard of reasonableness under the circumstances. *In re Quantum Health Resources. Inc.*, 962 F.Supp. at 1257 (citing *Central Railroad & Banking Co. v. Pettus*, 113 U.S. 116, 5 S.Ct. 387, 28 L.Ed. 915 (1885)). The "benchmark" percentage for this standard has been 25%, with the ordinary range for attorney's fees between 20 – 30%. *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir.1989); *Court Awarded Attorney Fees*, 108 F.R.D. at 247, n. 32. Accepted by the Sixth Circuit as a valid means to determine attorney's fees, the following six factors should be analyzed to ensure the award's reasonableness: the value of the benefit rendered to the class, the value of the services on an hourly basis, whether the services were undertaken on a contingent fee basis, the benefit to society, the complexity of the litigation and the professional skill and standing of counsel. *Bowling v. Pfizer Inc.*, 102 F.3d 777, 780 (6th Cir.1996); *Smillie*, 710 F.2d at 275. This analysis must be tempered with the understanding that the attorney's interest has become adverse to that of his client, as both seek compensation from the same fund.

Upon analyzing the factors set forth in *Bowling*, the magistrate judge determines that 20% of the common fund ($1,500,000) is a fair and reasonable award. The value of the benefit rendered to the class by way of this settlement is unquestioned, particularly

---

**3.** *See* Federal Judicial Center, *Manual for Complex Litigation Third*, 1995, pp. 172–174; Federal Judicial Center, *Manual for Litigation Management And Cost And Delay Reduction*, 1992, pp. 62–65; *Report of the Federal Courts Study Committee*, April, 1990, pp. 81–82.

when it was obtained from a defendant not originally named. Counsel's prompt use of facilitative mediation secured a significant settlement from defendants whose liability was undetermined, but whose costs in defending may well have been more than the settlement contribution. The attorneys recognized one another's strengths in class action securities litigation and utilized their time in an efficient manner by splitting responsibility to maximize the value of their services and reduce hours. A significant number of the class members entered into contingent fee agreements with the co-lead counsel. Contingent fee agreements indicate there is a certain degree of risk in obtaining recovery. However, an attorney's risk of recovering a settlement in a securities case has been reported as minimal.[4] Rather, the risk is how large the legal fee will be. *In re Quantum Health Resources, Inc.,* 962 F.Supp. at 1256. Therefore, the court must be wary not to rubber-stamp a fee request, regardless of any so-called "benchmark."

Class action securities litigation benefits society because it enables all the participants to share in the benefits, not merely those who hired the lawyer. Consequently, a reasonable fee must include attention to unjust enrichment for those class members who receive benefits without sharing in the expenses. It would not be fair to penalize those members who signed contingency fee agreements for 33% by enforcing those agreements and allow other class members to avoid expenses altogether. *See Report of Third Circuit Task Force,* 108 F.R.D. 237, 250 (1985). The professional skill and standing of co-lead counsel and the success achieved is evident. Without counsel's efforts, the likelihood of settlement in this action would be diminished. However, the court must weigh those factors against the diametrically opposed interests of attorneys and clients in the common fund. The court would be remiss in its duties if it did not ensure from the settlement a fair recovery for the client as well as adequate compensation for counsel. Thus, this court recommends that the attorneys should receive an award equivalent to 20% of the common fund. This equates to $1,500,000 and is to include all costs and those monies owed to attorneys Seymour and Kaufman.[5] The class in turn has the remaining $6,000,000.

## C. Robert Seymour[6]

■ Robert Seymour filed a separate application for attorney's fees based on his initial involvement with the suit. Seymour appeared as attorney of record in the securities action known as *McNeely, et al. v. Basic Energy and Affiliated Resources, Inc., et al.,* 95 CV 70293 prior to its consolidation with three other related cases.[7] On March 28, 1996 he willingly entered into a written agreement with attorneys Michael Serling P.C. and Humphrey, Farrington & McClain, P.C. which states:

"1. Robert V. Seymour agrees to withdraw and to his substitution as attorney for Plaintiffs in the above-captioned matter and upon obtaining an Order from the Court to that effect will be reimbursed his costs and attorneys fees as set forth below."

The total fee was $18,175. At the hearing conducted by the undersigned on September 25, 1997 Mr. Seymour did not contest the validity of this agreement. He argued that the fee of $18,175.00 was merely consideration for the substitution and not a waiver of any ultimate recovery. The argument sounds of avarice and is without merit. The settlement reached by the co-lead counsel was against PFS Investments and Primerica Financial Services, Inc., and not BEAR, the defendant in the action filed by Mr. Seymour. Therefore, it is recommended that the agreement entered into by Mr. Seymour be en-

4. Janet Cooper Alexander, *Do the Merits Matter? A Study of Settlements in Securities Class Actions,* 43 Stan.L.Rev. 497, 525 (1991).

5. Upon making their fee application to this court the co-lead attorneys indicated that they would apportion the award among themselves.

6. Jerry Kaufman withdrew his petition for attorney's fees and agreed to abide by the agreement he had entered into with lead counsel.

7. Consolidation was previously granted by United States District Judge Horace Gilmore.

forced and that he be denied any additional recovery.

## III. RECOMMENDATION

Accordingly, it is recommended that co-lead attorneys Kenneth McClain, D. Michael Kratchman and Michael Marsalese be awarded 20% of the settlement fund, based upon the percentage of the fund method. In the alternative, if the court chooses to utilize the lodestar method of calculation it should award $1,376,900. Both awards include (1) all costs, and (2) those fees owed to attorneys Robert Seymour and Jerry Kaufman as arranged pursuant to the previously entered into substitution agreements.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D.Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters,* 638 F.2d 947, 949–50 (6th Cir.1981). Filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D.Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.