915 F.2d 542
 1990-2 Trade Cases 69,215
 STATE OF FLORIDA, Plaintiff-Appellant,
v.
Stephen L. DUNNE, Petitioner-Appellee,
and
Exxon Corporation, et al., Defendants.
In re COORDINATED PRETRIAL PROCEEDINGS PETROLEUM PRODUCTS
ANTITRUST LITIGATION.
STATE OF FLORIDA, Plaintiff-Appellee,
v.
Stephen L. DUNNE, Petitioner-Appellant,
and
Exxon Corp., Defendant.
 Nos. 88-6442, 88-6531.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted April 11, 1990.
Decided Oct. 2, 1990.
 
 Jerome W. Hoffman, Chief, Antitrust Div., Tallahassee, Fla., for plaintiff-appellant-cross-appellee.
 James G. Dunn, San Diego, Cal., for defendant-appellee-cross-appellant.
 Appeal from the United States District Court for the Central District of California.
 Before NELSON, NORRIS and O'SCANNLAIN, Circuit Judges.
 O'SCANNLAIN, Circuit Judge:
 
 
 1
 We are asked to review an award of attorney's fees and expenses under the common fund doctrine to determine if it is reasonable under the circumstances.
 
 
 2
 * On July 9, 1973, the State of Florida, through its state Attorney General's office, filed a complaint in the United States District Court for the Northern District of Florida against seventeen major oil companies alleging, inter alia, conspiracy to violate various federal and state antitrust laws. This case (which we shall call the "Petroleum Products litigation") was eventually consolidated with others and transferred to the United States District Court for the Central District of California.
 
 
 3
 In July 1979, the Florida Attorney General's office entered into a contract for counsel with Stephen Dunne. Even after retaining Dunne, the Florida Attorney General's office itself continued to play an important role in the litigation. As many as five staff members, including three attorneys, allegedly were assigned to the Petroleum Products litigation on a virtually full-time basis.
 
 
 4
 The State of Florida ultimately reached settlements with some of the oil-company defendants, thereby creating a common fund for the benefit of Florida consumers. Between 1981 and 1983, Florida reached settlement agreements with twelve defendants, who together agreed to pay $4,170,000 in damages and legal costs to resolve Florida's claims for damages to public entities and consumers. In November 1986, Florida entered into a settlement with Gulf Oil in which Gulf agreed to pay $320,000 in cash and to deed to the state a parcel of real property said to be worth $630,000. The total principal amount of the settlements reached by Florida was $5,120,000.
 
 
 5
 On November 30, 1987, Dunne filed an application for attorney's fees and costs, seeking compensation for the hours he had worked on the Petroleum Products litigation and his concomitant expenses. In that application, Dunne explicitly waived his rights under the contract and elected instead to proceed against the common fund.
 
 
 6
 The Florida Attorney General's office filed an objection to Dunne's application for fees, arguing that Dunne had overstated his role. The district court held two hearings on the matter and received two rounds of supplemental memoranda, including declarations or affidavits from seven witnesses.
 
 
 7
 On January 8, 1988, the State of Florida filed its own application for attorney's fees and expenses. The application requested compensation from the common fund in the amount of $518,867.43 for attorney's fees and $1,117,219.58 for expenses. Florida did not request a hearing on its application.
 
 
 8
 On August 11, 1988, the district court filed a Memorandum of Decision, granting Dunne fees and expenses of $1,950,000 to be paid from the common fund created for the benefit of consumers.[1] The common fund was to receive a credit for $755,165 already paid to Dunne by the Florida Attorney General's office. The district court's Memorandum of Decision did not address Florida's fee and expense application.
 
 
 9
 On August 15, 1988, Florida filed a supplemental fee and expense application and then filed a motion for rehearing or clarification of the district court's August 11, 1988 Order granting Dunne attorney's fees and expenses.
 
 
 10
 On August 31, 1988, the district court entered a clarifying order, making an additional award to Dunne of $86,315 for costs to be added to the $1,950,000 attorney's fee award.[2] However, the district court corrected the amount to be credited to the common fund for amounts previously paid to Dunne by the Florida Attorney General to $841,480, leaving a net balance to be paid to Dunne out of the common fund of $1,194,835. The total award to Dunne (including the amount credited for amounts previously paid) equals roughly twenty-nine percent of the common fund. The district court's order of clarification did not address either Florida's fee and expense application or its supplemental fee and expense application. The record discloses that Florida's applications are still pending before the district court.
 
 
 11
 Florida appeals from the award to Dunne and Dunne cross-appeals. We have jurisdiction under 28 U.S.C. Sec. 1291.
 
 II
 
 12
 * As a general rule, parties to a lawsuit must bear their own expenses. Under the so-called "American Rule," each litigant must pay its own attorney's fees without regard to the outcome of the litigation. See Zambrano v. City of Tustin, 885 F.2d 1473, 1481 (9th Cir.1989).
 
 
 13
 There are, however, many exceptions to this rule. Over the years a number of statutory and equitable "fee-shifting" provisions have developed. The "common fund" or "equitable fund" doctrine is an example. When a case results in a common fund for the benefit of a plaintiff class, a court may exercise its equitable powers to award plaintiffs' attorneys' fees out of the fund. See Boeing Co. v. Van Gemert, 444 U.S. 472, 478, 100 S.Ct. 745, 749, 62 L.Ed.2d 676 (1980). The defendant deposits a specified amount of money for the benefit of the class in exchange for a release of liability. See Skelton v. General Motors Corp., 860 F.2d 250, 252 (7th Cir.1988), cert. denied, --- U.S. ----, 110 S.Ct. 53, 107 L.Ed.2d 22 (1989). The fee award is then taken as a share of the fund, thereby diminishing the sum ultimately distributed to the plaintiff class. See id. A fee award under the common fund doctrine is " 'based on the equitable notion that those who have benefited from litigation should share in its costs.' " Id. (quoting Report of the Third Circuit Task Force, Court Awarded Attorney Fees at 14 (Oct. 8, 1985)); see also Dawson, Lawyers and Involuntary Clients: Attorney Fees from Funds, 87 Harv.L.Rev. 1597, 1603-04 (1974).
 
 
 14
 Recently, a debate has arisen over whether attorney's fees awards in common fund cases should be calculated on a "lodestar" or "percentage of the fund" basis.[3] Since at least the early 1970's, the tendency has been to award such fees according to a lodestar approach. See, e.g., Lindy Bros. Builders Inc. v. American Radiator & Standard Sanitary Corp., 487 F.2d 161, 166-69 (3d Cir.1973). Recently, however, courts have begun to reconsider this approach. The Supreme Court sparked this reconsideration when it endorsed the percentage-of-the-fund approach for common fund cases in a recent case. See Blum v. Stenson, 465 U.S. 886, 900 n. 16, 104 S.Ct. 1541, 1550 n. 16, 79 L.Ed.2d 891 (1984) (unlike in the civil rights area, "the calculation of attorney's fees under the 'common fund doctrine' ... is based on a percentage of the fund bestowed on the class"). The Third Circuit followed up with a detailed report also recommending that compensation for creating common funds be calculated on a percentage-of-the-fund basis. See Court Awarded Attorneys' Fees, Report of the Third Circuit Task Force, 108 F.R.D. 237, 254-59 (1985). Certain commentators have endorsed the idea, see, e.g., Solovy & Kaster, Re-Examining the Lodestar, Nat'l L.J., Apr. 9, 1990, at 13-14, and one district court has crafted an extremely persuasive cost-benefit analysis to support the use of the percentage-of-the-fund method. See In re Activision Sec. Litigation, 723 F.Supp. 1373 (N.D.Cal.1989); see also In re Union Carbide Corp. Consumer Prods. Business Sec. Litigation, 724 F.Supp. 160 (S.D.N.Y.1989) (advocating use of the percentage-of-the-fund approach).
 
 
 15
 Despite the recent ground swell of support for mandating a percentage-of-the-fund approach in common fund cases, however, we require only that fee awards in common fund cases be reasonable under the circumstances. See Paul, Johnson, Alston & Hunt v. Graulty, 886 F.2d 268, 271 (9th Cir.1989). Accordingly, either the lodestar or the percentage-of-the-fund approach "may, depending upon the circumstances, have its place in determining what would be reasonable compensation for creating a common fund." Id.
 
 B
 
 16
 Under the circumstances of the instant case, the district court did not err in using the lodestar approach to calculate Dunne's attorney fees and expenses. This is not a case like Paul, Johnson, where the percentage method was clearly the better choice. See id. at 272. There, it was impractical, if not impossible, to use the lodestar approach because a significant percentage of the gross settlement amount was attributed to certain estates' claims which were governed by a contingency-fee agreement. See id. In the instant case, however, we have no such division of claims.
 
 
 17
 We conclude, however, that in applying the lodestar approach to Dunne's fee application, the district court did err in not having considered the effect, if any, of Florida's pending fee applications. In a common fund case, it will be difficult, if not impossible to assess the reasonableness of a fee application without reference to any other such applications pending before the court. Cf. International Travel Arrangers, Inc. v. Western Airlines, 623 F.2d 1255, 1278 (8th Cir.) (attorney's fee award in antitrust case "must be considered in light of the fact other attorneys' fees were also being paid" to different law firm for its involvement in the case), cert. denied, 449 U.S. 1063, 101 S.Ct. 787, 66 L.Ed.2d 605 (1980). A review of all pending fee applications is especially important where the combined effect of granting the fee applications in toto would be to reduce substantially the size of the common fund available for distribution to the plaintiff class. The fact that seventy-two percent of the common fund could be distributed in attorney's fees and costs in this case is disturbing.[4] Cf. id. (fact that forty-seven percent of total award in antitrust case would be paid to attorneys was "disturbing").
 
 
 18
 The costs awarded to Dunne should also be reevaluated. The district court awarded Dunne out-of-pocket expenses of $5 for each of the 17,263 hours Dunne claimed to have worked on the case, for a total award of $86,315. Previously, however, the district court had reduced the number of hours used to compute Dunne's attorney's fees award from 17,263 to 13,000. Dunne's per hour compensation for costs should have been reduced accordingly; if the district court awards Dunne out-of-pocket costs after all fees and other costs are taken into account, his compensation for out-of-pocket costs should be based on the number of hours for which his attorney's fees are paid.
 
 
 19
 We emphasize that, except as noted above with regard to the calculation of costs, we are not today deciding whether the district court's award of fees and expenses to Dunne was unreasonable. We are vacating the award and remanding for the district court to consider anew Dunne's fee and expense application in light of Florida's pending fee and expense application.
 
 
 20
 VACATED AND REMANDED.
 
 
 
 [1]
 This award was based upon six and one-half years of work. The district court awarded Dunne compensation for 13,000 billable hours (i.e., 2,000 billable hours per year) instead of the 17,263 hours Dunne claimed to have worked in his March 4, 1988 Declaration. The court also awarded compensation at the rate of $150 per hour rather than the $175 per hour rate requested by Dunne
 
 
 [2]
 Florida advanced Dunne $10 per hour under a monthly draw arrangement to cover his out-of-pocket expenses. The district court, however, awarded Dunne $5 per hour for costs, rather than the $10 per hour under the contract. The district court then multiplied $5 by the 17,263 hours Dunne claimed to have worked for an award of $86,315
 
 
 [3]
 In a "lodestar" analysis, the court calculates a lodestar figure by multiplying the number of hours reasonably expended by counsel on the particular matter times a reasonable hourly rate. See Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). The court may then adjust this lodestar figure upward or downward depending upon the effect of some or all of twelve factors set out in Kerr v. Screen Extras Guild, Inc., 526 F.2d 67 (9th Cir.1975), cert. denied, 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976). See Moore v. Jas H. Matthews & Co., 682 F.2d 830, 840-41 (9th Cir.1982)
 As the name indicates, however, in a "fair percentage" approach, the court makes a fee award on the basis of some percentage of the common fund. See Paul, Johnson, Alston & Hunt v. Graulty, 886 F.2d 268, 272 (9th Cir.1989) (endorsing twenty-five percent "benchmark").
 
 
 [4]
 We calculate this figure by dividing Dunne's and Florida's requested fee and expense application amounts by the total amount of the common fund