9 F.3d 513
 Robert W. RAWLINGS, on his own behalf and on behalf of all
others similarly situated, Plaintiff,
Beigel and Sandler, Ltd., Attorneys-Appellants,
v.
PRUDENTIAL-BACHE PROPERTIES, INCORPORATED, et al.,
Defendants-Appellees.
 No. 92-1588.
 United States Court of Appeals,
Sixth Circuit.
 Argued Aug. 10, 1993.
Decided Nov. 10, 1993.
 
 Ronald A. Schy, Norman Rifkind (argued and briefed), Herbert Beigel, Beigel & Sandler, Chicago, IL, for plaintiff.
 Bradley J. Schram, Gary M. Saretsky, Hertz, Schram & Saretzky, Bloomfield Hills, MI, Miriam G. Bahcall, Timothy A. Nelsen, Skadden, Arps, Slate, Meagher & Flom, Chicago, IL, for Prudential-Bache Properties, Inc., Prudential-Bache Securities, Inc.
 Ellen M. Tickner, Michael P. Coakley, Miller, Canfield, Paddock & Stone, Detroit, MI, for TGF Investors.
 Stephen F. Wasinger, Raymond W. Henney, Honigman, Miller, Schwartz & Cohn, Detroit, MI, for Laventhal and Horwath.
 Robert G. Russell, Kerr, Russell & Weber, Detroit, MI, for Fireman's Fund Ins. Co. of Newark.
 Before: JONES and NORRIS, Circuit Judges; and JARVIS, Chief District Judge.*
 ALAN E. NORRIS, Circuit Judge.
 
 
 1
 In this appeal we are asked to select the proper way to calculate attorney's fees when a successful class action has resulted in the creation of a common fund to be distributed among members of the class. Class counsel contend that the district court abused its discretion by adopting the wrong methodology. Upon review, we conclude that the district court properly tailored the lodestar method to fit the facts of this case. Accordingly, we affirm.
 
 I. BACKGROUND
 
 2
 In April 1990, Beigel & Sandler ("class counsel") filed this action naming Robert W. Rawlings as plaintiff, individually and on behalf of the class of purchasers of interests in CSH-I Hotel Limited Partnership, a real estate limited partnership that owned several hotels. Defendants sold the limited partnership interests, managed the partnership's properties, offered opinions on the financial projections found in the partnership's offering materials, and acted as sureties for the promissory notes that class members used to purchase their interests. Essentially, the complaint charged that defendants misstated or omitted material facts in the offering materials for the partnership interests in violation of both federal and common law.
 
 
 3
 After initiating suit, class counsel sought class certification, pursued discovery, responded to motions by defendants, including motions to dismiss and for summary judgment, and negotiated settlements with some defendants. In May and April of 1991, the court denied defendants' motions to dismiss, granted class certification, and tentatively set trial for the beginning of 1992. Soon thereafter, the parties entered into serious settlement negotiations.
 
 
 4
 By April 1992, the parties had reached an agreement by which defendants would pay the class $3.9 million ("the common fund"). In requesting that the district court approve the settlement, class counsel sought attorney's fees calculated at twenty-five percent of the common fund ($964,062), and reimbursement of expenses in the amount of $22,514. Alternatively, counsel requested a fee calculated by multiplying the reasonable number of hours expended by a reasonable hourly rate, with the resulting "lodestar" of $283,668 being enhanced by a multiplier of 3.3, the combination of which would yield a result similar to the twenty-five percent figure. The district court conducted a hearing at which it approved the settlement agreement, agreed to the reimbursement of expenses, and allowed attorney's fees in the amount of $567,337. In arriving at that figure, the court declined counsel's invitation to follow the percentage of the fund method and, instead, utilized the lodestar method, with a multiplier of 2 instead of 3.3.
 
 
 5
 This appeal followed. Because the fees are to be paid from the common fund recovered for plaintiffs, defendants have no direct interest in the outcome of this appeal and did not file a brief or otherwise appear.
 
 II. DISCUSSION
 
 6
 The appeal raises two issues. The first is whether the district court erred in applying the lodestar method rather than the percentage of the fund method. As our analysis of this issue leads us to answer "no," we must address a second issue: whether the district court abused its discretion when it selected a multiplier of 2.
 
 A. Lodestar Versus Percentage of the Fund
 
 7
 Class counsel argues that the percentage of the fund method is the appropriate way to calculate attorney's fees in common fund cases.
 
 
 8
 We are aware of the recent trend towards adoption of a percentage of the fund method in such cases. See Swedish Hosp. Corp. v. Shalala, 1 F.3d 1261 (D.C.Cir.1993); Camden I Condominium Ass'n, Inc. v. Dunkle, 946 F.2d 768 (11th Cir.1991); Court Awarded Attorney Fees, Report of the Third Circuit Task Force, 108 F.R.D. 237 (1985) ("Task Force Report"). Nonetheless, a number of our sister courts of appeals have recognized that the appropriate method for use in common fund cases depends upon the circumstances of each case. See Harman v. Lyphomed, Inc., 945 F.2d 969, 975 (7th Cir.1991); Florida v. Dunne, 915 F.2d 542, 545 (9th Cir.1990); Brown v. Phillips Petroleum Co., 838 F.2d 451, 454 (10th Cir.), cert. denied, 488 U.S. 822, 109 S.Ct. 66, 102 L.Ed.2d 43 (1988). In this circuit, we require only that awards of attorney's fees by federal courts in common fund cases be reasonable under the circumstances. Smillie v. Park Chem. Co., 710 F.2d 271, 275 (6th Cir.1983).
 
 
 9
 In assessing the reasonableness of requests for fees in class actions resulting in the creation of a common fund, a court must consider factors that are not present in statutory fee shifting cases. The interest of class counsel in obtaining fees is adverse to the interest of the class in obtaining recovery because the fees come out of the common fund set up for the benefit of the class. In addition, there is often no one to argue for the interests of the class (that their recovery should not be unfairly reduced), since it is to be expected that class members with small individual stakes in the outcome will not file objections, and the defendant who contributed to the fund will usually have scant interest in how the fund is divided between the plaintiffs and class counsel.[1] Task Force Report at 255 ("In these situations, the plaintiffs' attorney's role changes from one of fiduciary for the clients to that of a claimant against the fund created for the clients' benefit.").
 
 
 10
 When awarding attorney's fees in a class action, a court must make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved. Lindy Bros. Builders, Inc. of Phila. v. American Radiator & Standard Sanitary Corp., 487 F.2d 161, 166-68 (3d Cir.1973). The lodestar method better accounts for the amount of work done, while the percentage of the fund method more accurately reflects the results achieved. For these reasons, it is necessary that district courts be permitted to select the more appropriate method for calculating attorney's fees in light of the unique characteristics of class actions in general, and of the unique circumstances of the actual cases before them.
 
 
 11
 In order for us to review the court's exercise of discretion, the district court must provide a clear statement of the reasoning used in adopting a particular methodology and the factors considered in arriving at the fee. Hensley v. Eckerhart, 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983) ("It remains important ... for the district court to provide a concise but clear explanation of its reasons for the fee award.").
 
 
 12
 Of course, each method has its respective advantages and drawbacks. The percentage of the fund method has a number of advantages: it is easy to calculate; it establishes reasonable expectations on the part of plaintiffs' attorneys as to their expected recovery; and it encourages early settlement, which avoids protracted litigation. However, a percentage award may also provide incentives to attorneys to settle for too low a recovery because an early settlement provides them with a larger fee in terms of the time invested.
 
 
 13
 The lodestar method's listing of hours spent and rates charged provides greater accountability. In addition, enhancing the lodestar with a separate multiplier can serve as a means to account for the risk an attorney assumes in undertaking a case, the quality of the attorney's work product, and the public benefit achieved. The lodestar method also encourages lawyers to assess the marginal value of continuing work on the case, since the method is tied to hours and rates, and not simply a percentage of the resulting recovery.
 
 
 14
 However, the lodestar method has been criticized for being too time-consuming of scarce judicial resources. Shalala, 1 F.3d at 1269-70; Task Force Report at 250. District courts must pore over time sheets, arrive at a reasonable hourly rate, and consider numerous factors in deciding whether to award a multiplier. With the emphasis it places on the number of hours expended by counsel rather than the results obtained, it also provides incentives for overbilling and the avoidance of early settlement. Shalala, 1 F.3d at 1268-69; Task Force Report at 247-48.
 
 
 15
 In any event, under the circumstances of this case, we are unable to say that the district court abused its discretion in selecting the lodestar-multiplier method. The court recognized that it had a choice between the two methods. After expressing "shock" at the fee requested, the court questioned counsel extensively about the number of hours worked, the high number of attorneys on the case, and the characteristics of both the class and settlement. The case was settled before any protracted litigation, and the amount received in settlement was low relative to the losses suffered by members of the class.
 
 
 16
 B. Application of the Lodestar Method in this Case
 
 
 17
 The district court accepted class counsel's assurance that the number of hours worked on the case was 1,121, and that the appropriate lodestar fee was $283,668. Counsel had requested a multiplier of 3.3 based upon the contingency risk undertaken and the quality of the work performed. Such factors are indeed the focus of a district court's analysis when determining whether to utilize a multiplier. Task Force Report at 265; see also Lindy, 487 F.2d at 168.
 
 
 18
 However, one of the primary determinants of the quality of work performed is the result obtained, Lindy, 487 F.2d at 168; see also Hensley, 461 U.S. at 434-36, 103 S.Ct. at 1939-41 (noting that the most critical factor in determining a reasonable fee is the result achieved by counsel), and here the district judge expressed concern over the fact that the settlement reached by class counsel returned only about twenty-one percent of the class' initial investment. Were he to award the requested fees of almost $1,000,000, that return would have been reduced to about sixteen percent. Accordingly, the lower multiplier of 2 was selected. This determination was well within the district court's discretion.
 
 III. CONCLUSION
 
 19
 For the reasons stated, we conclude that use of either the lodestar or percentage of the fund method of calculating attorney's fees is appropriate in common fund cases, and that the determination of which method is appropriate in any given case will depend upon its circumstances. Because the district court did not abuse its discretion in adopting the lodestar method or in calculating the amount awarded, we affirm the district court's order in all respects.
 
 
 
 *
 The Honorable James H. Jarvis, II, Chief United States District Judge for the Eastern District of Tennessee, sitting by designation
 
 
 [1]
 That unique factors are present in common fund cases may be illustrated by the circumstances of this case, where neither defendants nor any members of the class filed objections to the requested 25% fee for class counsel