**In re DPL INC., SECURITIES LITIGATION.**

**No. 3:02cv355.**

United States District Court,
S.D. Ohio,
Western Division.

March 8, 2004.

James Rubin Cummins, Stanley Morris Chesley, Waite, Schneider, Bayless & Chesley Co. LPA, Cincinnati, OH, Lawrence D. McCabe, Richard H. Weiss, Steven G Schulman, Uri Seth Ottensoser, Milberg, Weiss, Bershad, Hynes & Lerach LLP, New York, NY, Michael Ryan Bar-

rett, Barrett & Weber, Thomas P. Glass, Richard Stuart Wayne, Strauss & Troy, Cincinnati, OH, Eric S. Bravo, Kevin Jesse Osterkamp, Roetzel & Andress, Columbus, OH, Robert S. Brown, The Brown Firm, Inc. LPA, Richard Lawrence Norton, Katz, Greenberger & Norton, Cincinnati, OH, John Henry Stachler, Jablinski, Folino, Roberts & Martin, Dayton, OH, for Plaintiffs.

Charles Joseph Faruki, Faruki, Ireland & Cox PLL, Dayton, OH, Eric T. Gortner, James C. Munson, Michael D. Foster, Kirkland & Ellis, Chicago, IL, Thomas Robert Kraemer, Faruki, Gilliam & Cox PLL, Dayton, OH, Mark Alan Vander-Laan, Cincinnati, OH, Mary Ellen Hennessy, Steven L. Bashwiner, Katten Muchin Zavis Rosenman, Chicago, IL, Michael J. Chepiga, Peter Eric Kazanoff, Simpson, Thacher & Barlett LLP, New York, NY, Nicole Marie Ruhenkamp, Roger John Makley, Coolidge, Wall, Womsley & Lombard, David Carr Greer, James H. Greer, Bieser, Greer & Landis, Dayton, OH, Jeffrey Charles Sharer, Jeffrey Robert Tone, John Henry Mulhern, Sara Kristine Rankin, Sidney Austin Brown & Wood LLP, Chicago, IL, for Defendants.

## DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN PART THE JOINT APPLICATION OF PLAINTIFFS' COUNSEL FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES (DOC. # 151)

RICE, District Judge.

These six consolidated federal securities class actions arise out of the allegedly failed investment strategy of DPL, Inc. ("DPL"). In their Consolidated, Amended Complaint, the Plaintiffs set forth claims under §§ 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b–5 promulgated by the Securities and Exchange Commission, 17 C.F.R. § 240.10b–5. A state law, shareholder derivative action which arises out of the same circumstances as these consolidated actions was filed shortly after this litigation. *Austern Trust v. Forster,* Case No. A0207067 (Hamilton County Common Pleas Court) (*"Austern Trust"*). The plaintiffs in *Austern Trust* were represented by many of the same attorneys as the Plaintiffs in this consolidated litigation. In anticipation of the trial scheduled in *Austern Trust,* the parties entered into settlement negotiations and were able to enter into a global settlement resolving both this litigation and *Austern Trust.*[1]

This Court gave its preliminary approval to the Settlement Agreement resolving this litigation and conditionally certified it as a class action. *See* Doc. # 144. The Court also ordered that notice of the settlement and a fairness hearing be given to the class, which was defined as any person or entity which had purchased DPL stock between October 15, 1998, and August 14, 2002.[2] *Id.* After a fairness hearing conducted in accordance with Rule 23(e) of the Federal Rules of Civil Procedure on December 22, 2003, the Court approved the Settlement Agreement. *See* Doc. # 167. Under the Settlement Agreement, the Plaintiffs and members of the class they represent were allocated $110 million in this case to resolve their claims.[3] The

---

1. Other cases were also filed in state court. All those cases were consolidated with *Austern Trust* as part of the settlement process.

2. The class was defined to exclude, *inter alia,* the Defendants and their officers, directors and partners. *See* Doc. # 144 at 3–4.

3. The Defendants agreed to pay an additional $35,500,000, in order to settle the cases pending in state court.

Settlement Agreement also indicated that Plaintiffs' counsel would request that the Court award them 35% of the $110 million for attorney's fees and costs.[4] The Defendants indicated that they would not object to such an award.

Shortly after the Court had given preliminary approval to the Settlement Agreement, Plaintiffs' counsel filed their Joint Application for an Award of Attorneys' Fees and Reimbursement of Expenses (Doc. # 151). Therein, counsel requests that the Court award them 35% of the $110 million being paid to settle this litigation, i.e., $38,500,000. During the hearing conducted on December 22, 2003, the Court heard the arguments of Plaintiffs' counsel and statements from two of their experts in support of that motion. In addition, the Court heard objections to the request for attorney's fees from Harvey Tuck and David Duwel, the latter on behalf of class members Robert and Joyce Buerger, Stephen Denman, Thomas Grove, Dana Bush, Robert Mills, Sr., Robert Mills, Jr., Richard and Irene Gray and Dana Bush (collectively "Duwel objectors").[5] The Duwel objectors acknowledged that Plaintiffs' attorneys are entitled to recover fees, while arguing that the Court should apply the lodestar method to compute those fees.[6] For reasons which follow, the Court concludes that the percentage of the fund method, as opposed to the lodestar method, should be used to compute attorneys' fees in this case, as Plaintiffs' counsel have requested; however, the Court reduces the requested per-

centage of the fund to 20%, from the 35% sought by Plaintiffs' counsel. Accordingly, the Court awards Plaintiffs' counsel $22,000,000 for fees and expenses.

■ This is what is frequently referred to as a common fund case, i.e., a case where named Plaintiffs have created a common fund by securing a recovery for themselves and the class they represent. As an initial matter, it bears emphasis that the award of attorneys' fees in a common fund case such as this litigation is the norm. *See Wyser–Pratte v. Van Dorn Co.,* 49 F.3d 213, 217 (6th Cir.1995) (explaining that District Court can award attorneys' fees in a common fund case). Consequently, it is not questioned that the Court will award attorneys' fees to Plaintiffs' counsel, leaving only the question of the amount of that award to be resolved. In *Rawlings v. Prudential–Bache Properties, Inc.,* 9 F.3d 513 (6th Cir.1993), the Sixth Circuit addressed the applicable standard for the award of attorney's fees in common fund cases, such as the instant litigation:

We are aware of the recent trend towards adoption of a percentage of the fund method in such cases. *See Swedish Hosp. Corp. v. Shalala,* 1 F.3d 1261 (D.C.Cir.1993); *Camden I Condominium Ass'n, Inc. v. Dunkle,* 946 F.2d 768 (11th Cir.1991); Court Awarded Attorney Fees, Report of the Third Circuit Task Force, 108 F.R.D. 237 (1985) ("Task Force Report"). Nonetheless, a number of our sister courts of appeals have recognized that the appropriate

---

4. Counsel for the plaintiffs in *Austern Trust,* who also represent the Plaintiffs in this litigation, have been awarded, as attorneys' fees and expenses, 35% of the $35,500,000 paid to settle that case, i.e., $12,425,000.

5. The Court received untimely letters objecting to the request for fees from counsel for the New York Teachers' Retirement System and the State of Wisconsin Investment Board.

6. Under the lodestar method, reasonable attorneys' fees are computed by multiplying the number of hours reasonably expended by a reasonable hourly rate. That product can then be adjusted upward or downward by a multiplier, depending upon the court's findings on a number of variables.

method for use in common fund cases depends upon the circumstances of each case. *See Harman v. Lyphomed, Inc.,* 945 F.2d 969, 975 (7th Cir.1991); *Florida v. Dunne,* 915 F.2d 542, 545 (9th Cir.1990); *Brown v. Phillips Petroleum Co.,* 838 F.2d 451, 454 (10th Cir.), *cert. denied,* 488 U.S. 822, 109 S.Ct. 66, 102 L.Ed.2d 43 (1988). In this circuit, we require only that awards of attorney's fees by federal courts in common fund cases be reasonable under the circumstances. *Smillie v. Park Chem. Co.,* 710 F.2d 271, 275 (6th Cir.1983).

In assessing the reasonableness of requests for fees in class actions resulting in the creation of a common fund, a court must consider factors that are not present in statutory fee shifting cases. The interest of class counsel in obtaining fees is adverse to the interest of the class in obtaining recovery because the fees come out of the common fund set up for the benefit of the class. In addition, there is often no one to argue for the interests of the class (that their recovery should not be unfairly reduced), since it is to be expected that class members with small individual stakes in the outcome will not file objections, and the defendant who contributed to the fund will usually have scant interest in how the fund is divided between the plaintiffs and class counsel. Task Force Report at 255 ("In these situations, the plaintiffs' attorney's role changes from one of fiduciary for the clients to that of a claimant against the fund created for the clients' benefit.").

When awarding attorney's fees in a class action, a court must make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved. *Lindy Bros. Builders, Inc. of Phila. v. American Radiator & Standard Sanitary Corp.,* 487 F.2d 161, 166–68 (3d Cir.1973). The lodestar method better accounts for the amount of work done, while the percentage of the fund method more accurately reflects the results achieved. For these reasons, it is necessary that district courts be permitted to select the more appropriate method for calculating attorney's fees in light of the unique characteristics of class actions in general, and of the unique circumstances of the actual cases before them.

In order for us to review the court's exercise of discretion, the district court must provide a clear statement of the reasoning used in adopting a particular methodology and the factors considered in arriving at the fee. *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) ("It remains important ... for the district court to provide a concise but clear explanation of its reasons for the fee award.").

Of course, each method has its respective advantages and drawbacks. The percentage of the fund method has a number of advantages: it is easy to calculate; it establishes reasonable expectations on the part of plaintiffs' attorneys as to their expected recovery; and it encourages early settlement, which avoids protracted litigation. However, a percentage award may also provide incentives to attorneys to settle for too low a recovery because an early settlement provides them with a larger fee in terms of the time invested.

The lodestar method's listing of hours spent and rates charged provides greater accountability. In addition, enhancing the lodestar with a separate multiplier can serve as a means to account for the risk an attorney assumes in undertaking a case, the quality of the attorney's work product, and the public benefit achieved. The lodestar method also encourages lawyers to assess the marginal value of continuing work on the case, since the method is tied to hours

and rates, and not simply a percentage of the resulting recovery.

However, the lodestar method has been criticized for being too time-consuming of scarce judicial resources. *Shalala*, 1 F.3d at 1269–70; Task Force Report at 250. District courts must pore over time sheets, arrive at a reasonable hourly rate, and consider numerous factors in deciding whether to award a multiplier. With the emphasis it places on the number of hours expended by counsel rather than the results obtained, it also provides incentives for overbilling and the avoidance of early settlement. *Shalala*, 1 F.3d at 1268–69; Task Force Report at 247–48.

*Id.* at 515–17 (footnote omitted).[7] *See also, Bowling v. Pfizer, Inc.*, 102 F.3d 777 (6th Cir.1996) (concluding that the District Court had not abused its discretion in a products liability class action in utilizing the percentage of the fund method to compute the award of attorneys' fees, while reducing the requested percentage).

Herein, the award of attorneys' fees must be driven by the results obtained by Plaintiffs' counsel. As the Sixth Circuit noted in *Rawlings*, "the percentage of the fund method more accurately reflects the results achieved." 9 F.3d at 516. Quite simply, every bit of evidence before the Court leads it to conclude that, from the perspective of the class, this was an *outstanding* settlement of a securities fraud class action. Examining the monetary relief obtained on behalf of the class, alone,[8] $110,000,000, supports that conclusion. Plaintiffs' counsel have submitted the affidavit of Frank Torchio ("Torchio"), an economist, who opines that the settlement amount of $110,000,000 represents between about 62% and 145% of the losses suffered by the members of the class as a result of the Defendants' violations of federal securities law.[9] Plaintiffs' counsel have also furnished the declaration by Samuel Issacharoff ("Issacharoff"), a Professor of Law at Columbia University. Therein, Issacharoff states that the available literature indicates that the average securities fraud class action settles for less than 15% of damages suffered by the class.[10] For instance, he cites a study of settlements of securities fraud cases by National Economic Research Associates, Inc. ("NERA"), which reported that, for settlements over $50,000,000, the median settlement represented 5.2% of investor losses. The NERA study also found that

---

7. In *Rawlings*, a securities fraud class action case which was settled, the Sixth Circuit concluded that the District Court had not abused its discretion in utilizing the lodestar method to award attorney's fees to class counsel. Plaintiffs' counsel have cited decisions, wherein other Circuits have concluded that the percentage of the fund method should be used. *See* Doc. # 151 at 21 (citing *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261 (D.C.Cir. 1993) and *Camden I Condominium Ass'n, Inc. v. Dunkle*, 946 F.2d 768 (11th Cir.1991)). Regardless of the persuasiveness of those decisions, this Court is obligated to follow *Rawlings*, wherein the Sixth Circuit held that a District Court has the discretion to employ either the lodestar or the percentage of the fund method to compute attorneys' fees in a common fund case.

8. In addition to monetary relief, the Settlement Agreement benefits the members of the class through certain changes in DPL's corporate governance structure.

9. Torchio used a different methodology to compute each of his two opinions on the aggregate damages suffered by the class. His first opinion on aggregate damages was that the class suffered damages in the sum of $176,600,000, of which the settlement is 62 %. Torchio's second opinion concerning aggregate damages, computed with an alternative methodology, was $76,000,000, of which $110,000,000 is 145%.

10. Issacharoff's declaration is attached to the Joint Application for an Award of Attorneys' Fees and Reimbursement of Expenses (Doc. # 151).

the average settlement in securities fraud class actions was $7,700,000, significantly less than the $110,000,000, which Plaintiffs' counsel obtained in this litigation. Issacharoff opined that the settlement of this litigation would place it in the top 10% of class action settlements since the passage of the Private Securities Litigation Reform Act ("PSLRA") in 1995.

The statements in Issacharoff's declaration were supported by the those in the declarations of Arthur Miller ("Miller") of the Harvard Law School and Professor Francis Conte ("Conte") of the University of Dayton Law School.[11] During the fairness hearing, Miller and Conte also spoke in favor of the request that the Court award 35% of the settlement amount for attorneys' fees and expenses. For instance, in his declaration, Miller discussed a study by Cornerstone Research, which examined post-PSLRA securities fraud settlements from December, 1995, until mid–2002. The Cornerstone study indicated that the median such settlement was $5,800,000.

Plaintiffs' counsel have also submitted the declaration of John Coffee, Jr. ("Coffee"), a professor of law at Columbia University. *See* Doc. #163. Therein, Coffee indicates that the $110,000,000 settlement of this litigation makes it the nineteenth largest settlement of a securities fraud class action. In addition, he states that only ten antitrust class actions have settled for greater amounts. Coffee also reports that all studies indicate that securities fraud class actions settle for between 3% and 6.2% of investor losses. That must be contrasted with the fact that, according to Torchio's affidavit, this litigation was settled for between 62% and 145% of shareholder losses.

Quite simply, the foregoing, unrefuted evidence convinces this Court that the settlement achieved in this litigation is outstanding, from the perspective of the members of the class. Moreover, a review of the Defendants' motions seeking dismissal of this litigation, motions which were not ruled upon due to the settlement, reveals that it is by no means certain that the claims of the Plaintiffs and the class they represent would have survived rulings on such. The settlement of a securities class action, which might not have survived a motion to dismiss, for the sum of $110,000,000, which represents from 62% to 145% of the damages the class could recover if they prevailed on their claims, *is a truly remarkable accomplishment and warrants the application of the percentage of the fund method to compute attorney's fees, as well as a sizeable fee for counsel who accomplished that feat.*

Nevertheless, in arguing that the Court should apply the lodestar method, the Duwel objectors cite *Menowitz v. NCR Corporation,* 1996 WL 1712776 (S.D.Ohio 1996), wherein this Court employed the lodestar method to compute attorney's fees. Since that decision was made in a case arising from a completely inapposite set of facts and circumstances, it does not convince the Court to utilize the lodestar method to compute attorney's fees herein. This Court's decision in *Menowitz* arose out of the efforts of NCR Corporation ("NCR") to stave off the unsolicited entreaties of AT & T Corporation ("AT & T"). The focus of that dispute in this Court was an action brought by NCR against AT & T, seeking a declaration that the ESOP it had adopted in order to prevent AT & T's attempted takeover was legal, as well as AT & T's counterclaim seeking to have the implementation of the

---

**11.** Miller's and Conte's declarations are likewise attached to the Joint Application for an Award of Attorneys' Fees and Reimbursement of Expenses (Doc. # 151).

ESOP enjoined. *NCR Corporation v. AT & T Corporation,* Case No. C–3–91–078 (S.D.Ohio). The Menowitz plaintiffs brought a putative class action, aligning themselves with AT & T and alleging that the adoption of the ESOP by NCR violated the duties it and its Board members owed to its shareholders. *Menowitz v. NCR Corporation,* Case No. C–3–91–012 (S.D.Ohio). This Court consolidated the two cases and held a bench trial on an expedited basis. Although counsel for the Menowitz Plaintiffs were present during that trial, they declined to question any witnesses. After the Court had concluded that the ESOP was illegal and enjoined its use, NCR and AT & T negotiated a merger. With counsel for the Menowitz plaintiffs playing a positive role in those negotiations. Although the merger seemingly mooted the Menowitz plaintiffs' claims, they subsequently filed an amended complaint, alleging that, during the consummation of the merger, AT & T and NCR had acted in a manner detrimental to NCR's shareholders. Thereafter, the Menowitz plaintiffs, NCR and AT & T entered into a settlement, under which the matter was certified as a class action, the plaintiffs' claims were dismissed with prejudice and AT & T agreed to pay the attorneys' fees and expenses of plaintiffs' counsel, as determined by the Court, in an amount not to exceed $3,750,000. Counsel for the Me-

nowitz plaintiffs then asked the Court to award them fees and expenses in the sum of $3,750,000, even though computing their fees using the lodestar method, without a multiplier, resulted in a figure less than half that amount. Counsel attempted to justify the amount requested by reference to the percentage of the fund method. The Court declined to apply that method, because a common fund had not been created as a result of counsel's efforts and, further, since the invalidation of the ESOP had resulted from the efforts of AT & T's counsel, not that of the Menowitz plaintiffs. Accordingly, the Court applied the lodestar method to compute fees for plaintiffs' counsel.[12] *Menowitz* is unquestionably distinguishable, since Plaintiffs' counsel *herein* created a common fund for all members of the class through their efforts.[13]

■ Having decided to employ the percentage of the fund method, the Court must now determine what percentage of the $110,000,000 common fund to award Plaintiffs' counsel. As is indicated, Plaintiffs' counsel have requested 35% of that fund, or $38,500,000. Under a lodestar method, without utilizing a multiplier, an attorney compensated at the hourly rate of $350, an overly generous rate for this part of the world, would have to work 110,000 hours to generate such a fee.[14] Plaintiffs'

12. The Court concluded that counsel for the Menowitz plaintiffs were entitled to an award of attorneys' fees, because counsel for AT & T had submitted an affidavit in which he indicated that they had been instrumental in negotiating the merger agreement.

13. The Duwel objectors have also cited *Blumberg v. Jacob,* 624 F.Supp. 669 (S.D.Ohio 1985), wherein this Court employed the lodestar method to award attorneys' fees to plaintiff's counsel in a securities fraud case that had settled creating a common fund. *Blumberg* does not stand for the proposition that the lodestar should or must be utilized to

determine attorneys' fees in securities fraud class actions, since this Court employed it therein because plaintiff's counsel had suggested its use, a suggestion which no one had opposed.

14. Courts have utilized the lodestar method to cross-check the reasonableness of an award made using the percentage of the fund method. *See e.g., Vizcaino v. Microsoft Corp.,* 290 F.3d 1043 (9th Cir.), *cert. denied,* 537 U.S. 1018, 123 S.Ct. 536, 154 L.Ed.2d 425 (2002); *In re Cendant Corp. Litigation,* 264 F.3d 201 (3rd Cir.2001).

counsel, collectively, undoubtedly expended no more than 1% to 2% of that number of hours *on this litigation* (as opposed to the state court action for which counsel have already been handsomely compensated). It bears emphasis that the Sixth Circuit in *Rawlings* stressed that the District Court's award of attorneys' fees in a common fund case must "be reasonable under the circumstances." 9 F.3d at 516. Because of the relatively small amount of work by counsel in this litigation before settlement, to award Plaintiffs' counsel 35% of $110,000,000, or $38,500,000, would, under the circumstances of this litigation, be unreasonable and excessive. The Court begins its explanation of that conclusion by reviewing the work of the attorneys representing the Plaintiffs in these consolidated cases in this Court.

After the initial complaint had been filed in each of these consolidated cases, counsel representing the named Plaintiffs in those lawsuits engaged in preliminary skirmishing over who would be named lead Plaintiff and who would be named lead counsel. Those preliminaries came to an abrupt end when the parties entered into a stipulation resolving the two questions, without the necessity of a hearing. *See* Doc. # 78. Consequently, it is not conceivable that counsel spent a great deal of time on that task. Thereafter, lead counsel filed a Consolidated, Amended Class Action Complaint (*see* Doc. # 83), and a consolidated memorandum in opposition to the Defendants' motions to dismiss. *See* Doc. # 121. The only other expenditures of time by Plaintiffs' counsel *in this litigation* related to the Defendants' requests that this Court stay discovery in *Austern Trust,* require

Plaintiffs to include the state derivative claim they had set forth in *Austern Trust* in this litigation and enjoin *Austern Trust* from proceeding to trial. Because of the stay in discovery in this case mandated by the PSLRA (*see* 15 U.S.C. § 78u-b(3)(B)), Plaintiffs' counsel expended no time conducting discovery *in this litigation.*[15] Thus, it can be seen that Plaintiffs' counsel devoted a relatively small amount of time *to this litigation.*

The experts of Plaintiffs' counsel, whom the Court has discussed above, uniformly indicated that attorneys' fees in securities fraud class actions average approximately 32% of the recoveries. While this Court does not question that average, it is not convinced by same that it is appropriate to award Plaintiffs' counsel 35% of the settlement fund in this case, particularly in view of the relatively small amount of effort expended by counsel in this litigation and the far lower recoveries, on the average, in other securities fraud class actions. Accordingly, based upon consideration of the relatively small amount of time expended by Plaintiffs' counsel and, yet, realizing the fact that they were able to obtain a most outstanding settlement of this securities fraud class action,[16] this Court concludes that a reasonable award of attorneys' fees, under the circumstances of this litigation, is 20% of the common fund created by the settlement.

Based upon the foregoing, the Court sustains in part and overrules in part the Joint Application for an Award of Attorneys' Fees and Reimbursement of Expenses (Doc. # 151). Counsel are awarded

---

**15.** They did conduct discovery in *Austern Trust;* however, as has been previously stated, counsel have been compensated for that work by the award of fees in that litigation.

**16.** It bears repeating that Plaintiffs' counsel settled this securities fraud claim, which might not have survived the Defendants' motion to dismiss, in exchange for the payment of $110,000,000, which was 62% to 145% of the losses suffered by the class.

$22,000,000 for such attorneys' fees and expenses.